STATE *ex rel.* J. H. SHERRILL and D. A. VANN v. MARCUS
A. MILAM, *et al.,* as the Board of Commission
of Everglades Drainage District, *et al.*

153 So. 100, 125, 136.
Opinion Filed April 7, 1933.
Judgment Amended May 17, 1933.
Opinions Filed November 17, 1933, and February 3, 1934.

492

494

496

*Watson & Pasco & Brown,* for Relators;

*Evans & Mershon, Carter & Yonge, George C. Bedell, Stapp, Gourley, Vining & Ward, D. L. Southard* and *Nathan Cockrell,* for Respondents.

CAMPBELL, Circuit Judge.—On petition filed in this Court by the relators, October 1, 1932, an alternative writ of mandamus, issued, commanding the respondents, members of the Board of Commissioners of Everglades Drainage District, to forthwith comply with the provisions of Section 1167, Revised General Statutes of ·Florida, by meeting, as therein required, and making, certifying, and forwarding to the tax assessors of counties lying, in whole or in part, in said Everglades Drainage District, lists of the lands in each of said counties, within such district, subject to drainage tax for the year 1932. In fixing the amount of such drainage tax per acre, they were directed to apply the rate of acreage tax provided for in Chapter 10026, Laws of Florida, Act of 1925.

The respondents, tax assessors of the several counties, named in the said alternative writ, were commanded to receive the said lists prepared by the Board of Commissioners of Everglades Drainage District, for their respective counties, and to forthwith enter upon the tax rolls of such counties, the drainage tax assessments as shown on such lists for the year 1932, against the land therein described. Should the respondents fail to comply with the commands of said alternative writ, they and each of them were directed to show cause, on October 8, 1932, why they refused to do so.

On the return day, named in the alternative writ of mandamus, the respondents, members of the Board of Commissioners of Everglades Drainage District, filed a motion to quash the same. On the same day the respondents, tax assessors, severally made return to the alternative writ of mandamus, some of them filing motions to quash, others filing motions to strike, while others filed answers or other special returns, each setting up his reason for not complying with the command of the writ, by performing the acts therein required to be performed.

The question raised by the tax assessors in their several returns to the alternative writ of mandamus, is, the propriety, and legality of requiring such tax assessors to withhold the State and county tax assessment rolls, from the tax collectors, of their respective counties, pending the adjudication of the propositions involved in this proceeding. When oral arguments were heard in this cause, we made an order, so modifying the alternative writ of mandamus, as to permit the respondents, tax assessors, to deliver the State and county assessment rolls for the year 1932, to the tax collectors of the counties affected, on November 1st, as provided by the statute, reserving all other questions involved, for further consideration and determination. State *ex rel.* v. Everglades Drainage District, *et al.,* 107 Fla. 91 144 So. 655.

Upon motion of the relators, at the hearing on oral argument, the alternative writ of mandamus was by leave of the Court, amended, by inserting another paragraph, designated as paragraph "4-a". All motions, answers and other special returns, made by the several respondents to the original, are considered as addressed to the alternative writ of mandamus as amended.

All the questions necessary to the determination of the propositions involved in the returns of the several re-

spondents, are apparently raised in the motion to quash the alternative writ of mandamus as amended, filed by the respondents, members of the Board of Commissioners of Everglades Drainage District. In this motion to quash, the respondents question the sufficiency of the allegations of fact contained in both the alternative writ and the petition as amended, to have authorized the issuance of such alternative writ, and to warrant the granting of a peremptory writ of mandamus.

The allegations of the alternative writ of mandamus as amended, so fully and completely set forth the facts upon which the relators base their cause, as also the statutory enactments, which they assert authorize the relief sought on the facts alleged, we think it might be advisable, to quote these allegations in full, even though it may appear to render this opinion unreasonably long. We also think it would not be amiss to quote the grounds of the motion to quash, in order that the contentions of each of the parties may be made clearly to appear. However, we will only set out in this opinion the substance of each document pertinent to a full consideration of the questions involved.

After the allegations of the alternative writ of mandamus as amended, identifying the Everglades Drainage District as a statutory subdivision of the State of Florida for governmental purposes, the pertinent allegations are, in substance, as follows:

That by Chapter 6456, Laws of Florida, Acts of 1913, Everglades Drainage District was established and its boundaries defined, and provision made for its government by a Board of Commissioners, composed of five State officials, with certain powers including the power to construct and maintain a system of canals, ditches, etc., for the drainage of the lands embraced within the defined boundaries, and the power to borrow money and issue bonds therefor; that

by Section 5 of the Act provision was made for the annual assessment of an acreage tax, and by Section 6 of the Act it was provided that the proceeds of such tax were to be used for the construction and maintenance of works, the purchase of necessary land and personal property; to the repayment of loans and the interest thereon; to the creation of a sinking fund for the retirement of the bonds that the Board might issue, and the payment of interest thereon; that Sections 8 and 9 of the Act defined the duties of the Board of Commissioners of Everglades Drainage District, and the tax assessors, with respect to the listing and assessing of the lands within the district for drainage tax; that by the provisions of Section 19 of the Act the Board of Commissioners were empowered to borrow money on permanent loans, and to issue and sell in the corporate name of the Board, negotiable bonds of the district in the aggregate amount of not exceeding $6,000,000.00; that by Section 20 of the Act the denominations of the bonds were fixed, and the rate of interest and place of payment were provided for; that by Section 21 the manner of the execution of the bonds, and certain recitations the bonds should include were fixed; that by Section 23 of the Act it was provided that said Act should, without reference to any other Act of the Legislature of Florida, be full authority for the issuance and sale of bonds provided for in the Act, and that in said Section 23 there was also a provision as follows: "The provisions of this Act shall constitute an irrepealable contract between the said Board and said Everglades Drainage District, and the holders of any bonds and the coupons thereof issued pursuant to the provisions hereof. Any holders of any of said bonds or coupons may either in law or in equity, by suit action or mandamus, enforce and compel the performance of the duties required by this Act in relation to the said bonds, or to the collection, enforce-

ment and application of the taxes for the payment thereof," which quoted provision, it is alleged, is still in full force and effect in respect to all outstanding bonds of the said Everglades Drainage District; that under the provisions of Section 24 of the Act provision is made that the State Treasurer as custodian of the funds belonging to the Board of Commissioners of Everglades Drainage District, out of the proceeds of the taxes levied and imposed by the Act, and out of any other moneys in his possession belonging to the Board of drainage district, so far as necessary to set apart and appropriate for the purpose, to apply such moneys to pay the interest on the bonds as the same fell due, and at the maturity of said bonds to pay the principal thereof out of said money, "and that there shall be and there is hereby created a sinking fund for the payment of the principal of said bonds, and the said Board shall set apart and pay into said sinking fund annually out of the taxes imposed and levied by this Act and other revenue funds of the said district, at least two per cent. of the amount of the bonds outstanding. The sinking fund for the payment of the principal of said bonds shall not be appropriated to any other purpose than that herein specified"; that no bonds were issued by the Board of Commissioners of Everglades Drainage District under the provisions of Section 19 of the Act until after an amendment thereof by Section 10 of Chapter 6954, Laws of Florida, Acts of 1915, which provided that the amount of bonds issued and outstanding under the Act should not at any time exceed $3,500,000.00 principal, with the added provision that nothing contained in such amended Section 19, should be a limitation upon the right of the Legislature to authorize additional bonds of said Board payable from drainage tax within the district, if at the time of such authorization by the Legislature, additional tax was provided sufficient for the payment of the

interest and retirement of the principal of such additional bonds.

Reference is made to the said Chapter 6456, and to the Act as modified with all prior amendments, as found in Section 1160 to 1188, inclusive, of the Revised General Statutes of Florida, and asked to be considered as fully as if incorporated in the alternative writ of mandamus as amended. That Section 19 of Chapter 6456 was amended by Chapter 7862, Acts of 1919, as amended by Chapter· 6957, Acts of 1915, and by Chapter 8413, Laws of Florida, Acts of 1921, providing in each instance authority for issuance of additional bonds; that said Section 19, Chapter 6456, as amended, was codified as Section 1178 of Revised General Statutes of Florida, and was amended by Chapter 9119, Laws of Florida, Acts of 1923, so as to authorize the Board of Commissioners to issue and have outstanding bonds to an amount of not exceeding $11,500,000.00, being $3,500,000.00 over and above the amount of bonds authorized under the provisions of Chapter 8413, Acts of 1923.

That Section 20 of Chapter 6456, Acts of 1913, providing for the denomination of bonds, the rate of interest, and the place of payment, as amended by Chapter 7305, Laws of Florida, Acts of 1917, was codified as Section 1179 of the Revised Statutes of Florida, which was amended by Section 1 of Chapter 10027, Laws of Florida, 1925, the same including a provision authorizing the Board of Commissioners, if for any reason they deemed it advisable, "to refund any of the bonds issued under the provisions of this Article or the interest thereon," to borrow money and issue coupon bonds of said Everglades Drainage District, in an amount sufficient to meet such bond and coupon indebtedness. The said refunding bonds to be issued in such denominations, bear interest rate, and mature at such time, not exceeding thirty years from the date of issue, as said

board might determine, and in all other respects such bonds shall in the manner of issuance and sale be subject to the provisions of this Article." And with further provision that, "All refunding bonds issued under authority hereof shall constitute an obligation of equal dignity with any and all other bonds heretofore, or that may hereafter be, issued against and by said district."

That under the provisions of Chapter 6456, Acts of 1913, with the amendments and the codification thereof, as Section 1178, Revised General Statutes, and subsequent amendments thereof, there are issued and outstanding bonds aggregating $9,919,000.00, and that each of said bonds so issued and outstanding is payable to bearer and each sold to *bona fide* purchasers for value; that each of the refunding bonds was in the denomination of one thousand dollars, and bore interest at the rate of five per cent. per annum, payable semi-annually, and that each refunding bond recited that it was issued for the purpose of refunding certain valid existing and outstanding indebtedness of the said district, under and pursuant to and in full compliance with the Constitution of the State of Florida and statutes of the State, including among others Chapter 10027, Acts of 1925, and in pursuance of resolutions and proceedings of the Board of Commissioners of Everglades Drainage District, duly had and adopted.

That each issue of the bonds now outstanding, including the issue of refunding bonds on July 1, 1925, was made pursuant to a resolution, including a provision in language as follows, to-wit:

"Be It Resolved, That there shall be and is hereby created a sinking fund for the payment of the principal of the said bonds, and the Board does hereby set apart and direct to be paid into such sinking fund annually, out of the taxes levied and imposed in said district, and the other revenues

and funds of this district, not less than two per cent. of the amount of bonds outstanding, and in and for each of the years during which said bonds shall mature there shall in addition be paid into the sinking fund, in time to reasonably pay the principal of said bonds after they mature, the amount of bonds maturing in such year. The said sinking fund for the payment of the principal of said bonds, shall not be appropriated for any other purpose than that herein specified."

That said sinking fund has not been maintained, and that $1,056,715.00 of interest is in default and unpaid, and that $501,000.00 of principal is in default and unpaid, and that in addition thereto $50,000.00 of principal and $253,737.50 of interest will be due January 1, 1933, and $249,000.00 of principal, and $252,547.50 of interest will be due July 1, 1933.

That there is not in the hands of the State Treasurer sufficient moneys, including moneys in the sinking fund, to pay the amount of a judgment recovered on March 28, 1932, in the District Court of the United, Northern District of Florida, against said district, by H. C. Rorick and others for the sum of $184,349.00.

That by Chapter 10026, Laws of Florida, Acts of 1925, Section 1178, Revised General Statutes, was further amended, so as to authorize said Board and district to have outstanding at any time bonds not to exceed the sum of $14,250,000.00; that no additional bonds were issued under such authorization, but refunding bonds were issued and are outstanding, under the provisions of Chapter 10027, Acts of 1925, amending Section 1179, Revised General Statutes, which was a codification of Section 20, of Chapter 6456, Acts of 1913, as amended; that all the outstanding bonds, including the refunding bonds, were issued under

the authority of, and entitled to the full protection of said Chapter 6456 of the Acts of 1915, and its amendments.

That by Section 5 of Chapter 6456, Acts of 1915, as from time to time amended, and subsequently codified as in Section 1164 of Revised General Statutes of Florida, and as amended from time to time, certain acreage taxes were levied on the lands in the district, which by Section 24 of said Chapter 6456, now codified as Section 1183, Revised General Statutes, were appropriated to the payment of interest on the said bonds, and the principal of bonds at the maturity thereof, requiring the State Treasurer as the custodian of the money to apply the same to the payment of such interest and principal.

That refunding bonds were issued, under the authority of Chapter 10027, Acts of 1925, and are outstanding, some of which each of the relators is a holder for value, and which are, by the provisions of the law, made of equal dignity with all other bonds issued by the district.

The alternative writ as amended sets forth in detail a comparison of the acreage tax rate fixed by Chapter 9119, Laws of Florida, Acts of 1923, and the tax rate authorized by Chapter 10026, Laws of Florida, Acts of 1913, showing a substantial increase under the provisions of the latter Act. It then proceeds to further allege, that by reason of the fact that the outstanding refunding bonds dated July 1, 1925, and issued under the provisions of Chapter 10027, Acts of 1923, were of equal dignity with all other bonds of Everglades Drainage District, and by reason of the fact that at the time of the issuance of said refunding bond on July 1, 1925, the rate of acreage taxes from which the same were entitled to be paid, was defined in Chapter 10026, Acts of 1925, and that the holders of such outstanding refunding bonds and of the other outstanding bonds of the district were and are entitled to the levy and assessment of the

taxes against the lands in said drainage district, as defined in said Chapter 10026.

That notwithstanding the provisions of Section 1167 of Revised General Statutes, the Board of Commissioners of Everglades Drainage District have not for the year 1932 prepared for any of the counties lying in whole or in part in said district, a list of the lands lying in such county and embraced in such district, designating upon such list or lists the amount of acreage tax assessed and levied, by Chapter 10026, or any other Act, against the various parcels of land in said district, nor have they prepared a list, and published notice as required by said law, nor have they certified and forwarded such list to the tax assessors of the several counties, that by reason of such default by the Board of Commissioners, the tax assessors of the several counties have not entered upon the tax rolls of their respective counties for the year 1932, any list of the lands of said district with the taxes levied and assessed against the same, at the rates specified in said Chapter 10026 or any other Act, and that therefore no acreage taxes will be assessed against the lands of the district for the year 1932, as required under the provisions of the law, unless the said Board of Commissioners are required and compelled by mandamus to prepare the lists of land as required by Section 1167 of the Revised General Statutes of Florida, and perform the other duties therein required; and the tax assessors required to enter the same upon the tax rolls of the respective counties as required by 1168, Revised General Statutes of Florida.

That by Chapter 13633, Acts of 1929, the personnel of the Board of Commissioners of Everglades Drainage District was increased by the addition of five persons to be appointed by the Governor, who should be land owners within the district, and that by Chapter 14714, Acts of 1931, the personnel of the Board was further changed so as to have

it composed only of five persons, land owners in the district, to be appointed by the Governor. The writ also setting forth the names of the respondents herein, as the appointees to said Board by the Governor.

That said Chapter 13633, Acts of 1929, undertook to levy, in lieu of all other acreage taxes or assessments on the lands of said district, certain acreage taxes for 1929 and subsequent years, at rates defined in Section 6 of the Act, which provided there should be deducted from the amount of such taxes provided for on each acre of land within the district for each year, an amount equal to the sum levied for such year upon such land, as an acreage tax under Chapter 13711, Acts of 1929, providing for the creation of Okeechobee Flood Control District; that in addition thereto, it was provided that the Board of Commissioners of Everglades Drainage District should have the right to reduce the taxes levied in each zone of the district, defined in the Act, to the extent of not more than twenty-five per cent.; that such acreage taxes provided for in Chapter 13633 were less than the acreage taxes provided for in either of Chapter 9119, Acts of 1923, or Chapter 10026, Acts of 1925, and that said Chapter 13633, Acts of 1929, as to the rate of acreage tax therein specified, is unconstitutional and void as to each and every of the holders of the outstanding bonds of Everglades Drainage District, both refunding and original, because it impairs the obligation of the contract of such bond in violation of the Constitution of the United States, by undertaking to reduce the rate of taxation fixed and in force at the time of the issuance of such outstanding bonds both refunding and original.

That by the provisions of Chapter 14717, Acts of 1931, the Legislature of Florida, undertook to levy a Debt Service Tax as defined in Section 7 of the Act, for the purpose of enabling the Board of Commissioners of Everglades Drain-

age District to pay the principal and interest of all outstanding obligations of the district, the said Debt Service Tax being less than the amount of acreage taxes provided for by Chapter 10026, Acts of 1925, in force when the outstanding refunding bonds were issued. That said Chapter 14717, Acts of 1931, in respect to the amount of acreage tax is void and of no effect against the holders of outstanding bonds of the district issued prior to the enactment, because it impairs the obligations of the contract of said bondholders, in violation of the Constitution of the United States.

That no payments have been made upon either principal or interest of the outstanding bonds of the district since July 1, 1930; that all interest on said bonds accruing since that date is past due and in default, and that the State Treasurer has not in his hands funds sufficient to pay the same, nor are the funds in the sinking funds of the district sufficient to pay past due principal and interest of said district bonds.

That the only means of payment of the bonds of said district is the taxes levied under Chapter 6456, Acts of 1913, and its amendments, and the appropriations made by the provisions of Section 1183, Revised General Statutes, being Section 24 of said Chapter 6456, Acts of 1913. That unless the assessment of acreage taxes for the year 1932 is made, as required by law, so that the same may be collected by the tax collectors of the various counties lying in whole or in part in the district, the holders of the outstanding bonds of the district will be deprived of the payment of the interest on, and the principal of, said bonds as they mature.

That the petitioner, J. H. Sherrill, is the holder in due course for value, of seventeen of the refunding bonds issued by said district of the aggregate par value of $17,000.00

bearing interest at five per cent. per annum payable semi-annually as evidenced by coupons attached, fifteen of said bonds maturing July 1, 1949, and two maturing July 1, 1951, and that he is also holder of interest coupons on said bonds, due January 1, 1932, and July 1, 1932.

That the petitioner, D. A. Vann, is the holder in due course for value of eight of the refunding bonds of the said district, each for the sum of One Thousand Dollars, due and payable July 1, 1949, and bearing interest at the rate of five per cent. per annum payable semi-annually, evidenced by coupons attached, and that he is the holder of past due interest coupons on each of said bonds.

That the listing of the lands by the Board of Commissioners of Everglades Drainage District, and the forwarding thereof to the tax assessors of the several counties as required by 1167 of Revised General Statutes, and the extension of such lists on the tax rolls of such counties by the tax assessors thereof, as required by Section 1168, for the year 1932, is essential to the collection of the acreage tax for such year, to which petitioners and other bond holders have the right to look for the payment of their bonds and coupons.

The questions raised by the motion to quash may be summarized as follows:

That Chapter 14717, Laws of Florida, Acts of 1931, defines the duty of the Board of Commissioners of Everglades Drainage District as to the assessing of acreage tax, and it is not shown in the alternative writ, that the statute is void.

That it affirmatively appears from the alternative writ that the relators are not entitled to have taxes assessed at the rate fixed by Chapter 10026, Laws of Florida, Acts of 1925.

That upon the face of the alternative writ, the relators

are not entitled to have the command of the writ enforced as a whole, that the command of the writ exceeds the legal duty of respondents.

That it affirmatively appears from the allegations of the alternative writ, that the increased tax rate provided by Chapter 10026, over that provided for in Chapter 9119, Acts of 1923, was to provide for payment of additional bonds, authorized by Chapter 10026, and that no additional bonds have been issued under the Act.

That bonds issued under Chapter 10027, were renewals of existing bonds, and not "additional bonds," within the meaning of Section 10, Chapter 6957, Acts of 1915, and no increase of tax rate was authorized by the refunding Act, Chapter 10027, Acts of 1925, which became a law June 4, 1925, seven days before Chapter 10026 became a law.

That there being no additional bonds issued, there was no consideration for the increase in tax rate provided for in Chapter 10026, Acts of 1925, and that the maintenance of such increased rate did not become a part of the bond contract.

That there is no allegation in the alternative writ that the total assessments levied under Chapter 14717, Acts of 1931, are less than the total assessment authorized in either Chapter 9119, Acts of 1923, or Chapter 10026, Acts of 1925.

That the allegations of the alternative writ, that the total taxes levied under provision of Chapter 13633, Laws of Florida, 1929, is less than taxes levied under Chapter 9119, Acts of 1923, is not borne out by a computation of the total levied under the respective Acts.

That the provisions of Section 1167 and 1168, Revised General Statutes, are not now the law of Florida, the same having been repealed, by Chapter 14717, Acts of 1931.

That it appears from the allegations of the alternative writ, that there has been unreasonable delay on the part of

relators in applying for relief, and that the issuance of a peremptory writ of mandamus would cause confusion and disorder.

It will be seen from the foregoing summary of the allegations of the alternative writ of mandamus as amended, and the grounds of the motion to quash the same, that the proposition raised, involve the consideration of the statutes establishing, and providing for the government, control and maintenance of Everglades Drainage District, originating with Chapter 6456, Laws of Florida, Acts of 1913, and amended by Chapter 6957, Laws of Florida, Acts of 1915, Chapter 7305, Laws of Florida, Acts of 1917, and Chapter 7863, Laws of Florida, Acts of 1919, all of which are codified in Revised General Statutes of Florida, under Title VII, Article IV, and found in Sections 1160 to 1188, inclusive. (Compiled General Laws, Sections 1530 to 1543, and Sections 1545, 1546, 1547, 1552, 1553, 1554, 1555, 1556, 1557, 1560, 1561, 1562, 1563, 1564 and 1565.) There is also involved a consideration of Chapter 8413, Laws of Florida, Acts of 1921, Chapter 9119, Laws of Florida, Acts of 1923, Chapters 10026 and 10027, Laws of Florida, Acts of 1925, Chapter 13633, Laws of Florida, Acts of 1929, and Chapter 14717, Laws of Florida, Acts of 1931.

In previous decisions of the Court we have held, that where a motion is made to quash an alternative writ of mandamus, all the allegations of such alternative writ, sufficiently pleaded, are admitted to the true. State v. Jacksonville Terminal Co., 71 Fla. 295, 71 So. 474; State v. Florida East Coast Railroad Co., 71 Fla. 433, 71 So. 543. In our consideration of the motion to quash the alternative writ in the instant case, we therefore, for the purpose of considering the motion, consider that all the allegations of the alternative writ as amended, which are properly and sufficiently pleaded, are true. As we view the grounds of

the motion to quash there is no question raised as to any defect in the alternative writ, as a pleading, but it questions the sufficiency of the facts alleged, to warrant the relief asked for.

Inasmuch as Mr. Justice WHITFIELD in a carefully prepared statement in the opinion prepared by him, in the case of Martin v. Dade Muck Land Company, 95 Fla. 530, 116 So. 449, has given a full and instructive history of the statutes above referred to, up to the time the opinion was written, and inasmuch as another complete history of all the enactments herein above referred to has been recently given in the able opinion prepared by Federal Judge STRUM, former Chief Justice of this Court, in the case of Rorick v. Board of Commissioners of Everglades Drainage District, 57 Fed. 2d., 1048, we deem it unnecessary in our discussion of the instant case to review these statutes, except insofar as we may be required to quote such portions as are pertinent to the questions raised herein.

The two principal questions involved in this case are, First: Have the Relators as holders of negotiable coupon refunding bonds, of Everglades Drainage District issued under the provisions of Chapter 10027, Laws of Florida, Acts of 1925, the right by mandamus to compel, the present Board of Commissioners of Everglades Drainage District, to prepare tax lists for the year 1932, of the lands subject to drainage tax in said district, and send down such lists to the tax assessors of the counties affected, and to require the tax assessors to enter such lists upon the tax assessment rolls of their respective counties, in accordance with the provisions of Sections 1167 and 1168, Revised General Statutes of Florida, Compiled General Laws, 1927, Sections 1537 and 1538? The Revised General Statutes of Florida, 1920, is the last revision of the General Statutes of the State to be enacted as a whole by the Legislature.

The second question involved is: What is the acreage tax rate applicable in a mandamus proceeding by the holders of negotiable coupon refunding bonds, issued by virtue of Chapter 10027, Laws of Florida, Acts of 1925?

Chapter 6456, Acts of 1913, established the Everglades Drainage District and provided for a Board of Commissioners for said district and for the levy of taxes and for drainage operations for the reclamation of the lands in the district.

Under the provisions of Section 5, Chapter 6456, now, with certain amendments hereinbefore referred to, codified as Section 1164, Article IV, Revised General Statutes of Florida, Section 1534, Compiled General Laws, 1927, an acreage tax was levied and imposed, for the purpose of "constructing, completing and maintaining the work of drainage and reclamation," etc., authorized by the Act. In Section 6 of Chapter 6456, now codified as Section 1165, Revised General Statutes of Florida, Section 1535, C. G. L., it is provided among other things that "the proceeds arising from the acreage tax levied by *this Article* shall be used by the said Board in the construction and maintenance of canals, the purchase of land and personal property and to repay loans, and the interest thereon, and to *the creation of a sinking fund for the retirement of the principal of the bonds that the Board may issue under the provisions of this Article and to the payment of interest thereon."* (Italics supplied.)

Section 19 of Chapter 6456, Laws of Florida, Acts of 1913, which as amended by Section 10, Chapter 6957, Laws of Florida, Acts of 1915, and Section 3 of Chapter 7862, Laws of Florida, Acts of 1919, is now Section 1178, Revised General Statutes of Florida, provides among other things as follows:

"The Board of Commissioners of Everglades Drainage District, is hereby authorized and empowered to borrow

money on permanent loans, and incur obligations from time to time * * * for the purpose of raising funds to continue and prosecute to final completion, the canals * * * and all other expenses necessary or needful to be incurred in carrying out the purposes of *this Article,* and the better to enable said Board to borrow the money necessary to carry out the purposes aforesaid, the said Board is hereby authorized and empowered *to issue in the corporate name of said Board negotiable coupon bonds of said Everglades Drainage District."* (Italics supplied.)

According to the allegations of the alternative writ of mandamus as amended, the Board of Commissioners, under the authority given in Section 1178, Revised General Statutes, *supra,* had issued and there were outstanding, up to and including January 1, 1925, negotiable coupon bonds aggregating several million dollars. On June 4, 1925, Chapter 10027, Laws of Florida, became a law. It was passed to amend Section 1179, Revised General Statutes of Florida. Under the provisions of Chapter 10027, Laws of Florida, the Board of Commissioners of Everglades Drainage District, were authorized, in the event they should, "for any reason deem it advisable for the best interests of the District to refund any of the Bonds issued under the provisions of *this Article,* or the interest thereon *to borrow money,* and issue in the name of said Board, notes or *negotiable coupon bonds* of said Everglades Drainage District, in an amount sufficient to meet such bonds and coupon indebtedness." (Italics supplied.)

It is further provided in Chapter 10027, Laws of Florida, *supra,* that all refunding bonds issued under its provisions shall constitute an obligation of equal dignity with any and all other bonds theretofore issued or that might thereafter be issued against the district.

According to the admitted allegations of the alternative

writ of mandamus as amended, the relators herein are holders for value of negotiable coupon refunding bonds, authorized by, and issued under, the provisions of Chapter 10027, Laws of Florida, Acts of 1925, *supra;* and such bonds are, by virtue of this law, of equal dignity with any bonds issued by the Board of Commissioners either prior, or subsequent to the enactment.

What are some of the contract rights of the holders of negotiable coupon bonds of Everglades Drainage District?

Section 23 of Chapter 6456, Laws of Florida, Acts of 1913, which is now codified under Article IV, Title VII, "Everglades Drainage District" as Section 1182, Revised General Statutes of Florida, provides as follows:

*"This Article* shall without reference to any other Act of the Legislature of Florida be full authority for the issuance and sale of the bonds in *this Article* authorized, which bonds shall have all the qualities of negotiable paper under the law merchant, and shall not be invalid for any irregularity or defect in the proceedings for the issue and sale thereof, and shall be incontestible in the hands of *bona fide* purchasers or holders thereof for value. No proceedings in respect to the issuance of any such bonds shall be necessary, except such as are required by *this Article."*

"The provisions of *this Article shall constitute an irrepealable contract between the said Board of said Everglades Drainage District and the holders of any bonds and the coupons thereof issued pursuant to the provisions hereof. Any holder of any of said bonds or coupons may either at law or in equity by suit action or mandamus, enforce and compel the performance of the duties required by this Article of any of the officers or persons mentioned in this Article in relation to the said bonds, or the collection, enforcement and application of taxes for the payment thereof."* (Italics supplied.)

Section 1179, Revised General Statutes of Florida, is a codification of Section 20, Chapter 6456, Laws of Florida, Acts of 1913, *supra,* as amended by Section 6, Chapter 7305, Laws of Florida, Acts of 1917. It is found under Article IV, Title VII, of the Revised General Statutes.

When the term *"this Article"* is used in the several sections of the Revised General Statutes and the subsequent amendments thereto, it has reference to Article IV of Title VII of said Revised General Statutes, above mentioned, under which all the laws concerning Everglades Drainage District are codified.

In the enactment of the statutes providing for the Everglades Drainage District (Chapter 6456, Laws of Florida, Acts of 1913, *supra*) it was the legislative intent that its several provisions form and each become a part of one general scheme, or program for the drainage and reclamation of the lands embraced in the district.

It will be noted in the original Act, viz., Chapter 6456, Laws of Florida, *supra,* that in Section 6 thereof the words, *"this Act,"* are used in referring to the acreage tax authorized in Section 5. In Sections 8 and 9, the words "this Act" are used in referring to the listing of the lands for acreage tax, and the assessment thereof by the tax assessors. In Sections 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29 and 30, we find the same term, *"this Act,"* used, thus indicating the intention that the entire law was one general plan for the drainage of the district.

When the Revised General Statutes were written and adopted, the same purpose and intent is manifest in the codification therein of all these sections of Chapter 6456, Laws of Florida, Acts of 1913, and the amendments thereto under Title VII, Article IV. Each section of the Revised General Statutes as codified under this Article and Title, substituting the words *"this Article"* for the words *"this*

*Act,"* found in the original law. It will be noted further that in each of the Acts of the Legislature amending certain sections of Revised General Statutes pertaining to Everglades Drainage District, the lawmakers use the term *"this Article,"* still carrying out the idea that such amendments should be a part of the general scheme or program provided for in the original Act.

When, therefore, in Chapter 10027, Laws of Florida, Acts of 1925, *supra,* amending Section 1179, Revised General Statutes, *supra,* it is provided that "in the event the Board of Commissioners of Everglades Drainage District, shall for any reason deem it advisable and for the best interest of the district to refund any of the bonds issued under the provisions of *'this Article'* or interest thereon, said Board of Commissioners may borrow money and issue in the corporate name of the said Board, notes or negotiable coupon bonds, etc., and when in the same Act it further provides, "Said refunding bonds shall be issued in such denominations, bear such interest, rate, and mature at such time or times, as said Board may determine, and in all other respects said bonds shall in the *manner* or issuance and sale be subject to the provisions of *'this Article,'* " it necessarily gives such refunding bonds the same standing as the bonds issued under any of the provisions of the law found in the sections of the Revised Statutes codified under Article IV, Title VII.

The holders of refunding bonds issued under the authority of Chapter 10027, Laws of Florida, Acts of 1925, had therefore, the irrepealable contract provided for in Section 1182, Revised General Statutes of Florida, and the right, as such bondholder, to "either at law or equity by suit action or mandamus to *enforce and compel the performance of the duties required by this Article* of any of the officers or persons mentioned in *this Article* in relation to the said bonds

or to the *collection, enforcement and application of the taxes for payment thereof."* (Italics supplied.)

Under the admitted allegations of the alternative writ of mandamus as amended, the relators are as we have already observed holders for value of negotiable coupon refunding bonds, authorized by and issued under the provisions of, Chapter 10027, Laws of Florida, *supra.* Such bonds being, under this law, of equal dignity with any and all other bonds of the district, issued prior or subsequent to the enactment, the relators therefore have, under the provisions of Section 1182, Revised General Statutes, the right by mandamus to enforce and compel the officers of Everglades Drainage District, to perform their duties, in relation to such bonds, and the collection, enforcement and application of the drainage taxes as required in said section.

Section 1167, Revised General Statutes of Florida, Section 1537, Compiled General Laws, requires the Board of Commissioners of Everglades Drainage District to perform the ministerial duty of preparing the lists of lands subject to drainage tax in each county embraced in the district, with the amount of tax on each parcel, and forward to the tax assessors, before the drainage acreage tax can be entered on the tax rolls of the respective counties. The tax assessors are not authorized to enter such drainage acreage tax on the tax rolls, and the tax collectors cannot collect the same, unless and until the Board of Commissioners prepare and forward to the assessors the lists of land with the amount of the tax fixed by the law.

The admitted allegations of the alternative writ of mandamus as amended, show that the respondents, members of the Board of Commissioners of Everglades Drainage District, entirely failed to perform their duty in preparing the lists of lands, and levying the rate of acreage tax for the year 1932, as required by Section 1167, *supra.* Necessarily

the respondents, tax assessors, have been unable to function as required in Section 1168, Revised General Statutes, Section 1538, Compiled General Laws.

The relators, as holders of negotiable refunding bonds issued on July 1, 1925, have the right under Section 1182, Revised General Statutes, by writ of mandamus, to compel the Board of Commissioners of Everglades Drainage District and the tax assessors of the district to function for the year 1932, as required in Section 1167 and 1168, Reivsed General Statutes.

Furthermore, the provisions of the several statutes and the amendments thereto regarding the issuance of the Everglades Drainage District bonds, and the levying, assessing and collection of the acreage tax for drainage, and also for the application of the proceeds thereof to the payment of interest and the creation of a sinking fund for the payment of principal when due, in effect at the time of the issuance of the refunding bonds held by relators, became a part of the contract between the Board and such refunding bondholders.

The general rule is, that included within the obligation of such a contract, is the power of taxation, the rate of taxation, the rate of taxation if such is prescribed, and the remedies generally existing for the enforcement of such tax at the time the contract was entered into. U. S. *ex rel.* Von Hoffman v. Quincy, 4 Wall, 535, 18 S. Ed. 403; Galena v. Amy, 5 Wall. 705, 18 L. Ed. 560; Mobile v. Watson, 116 U. S. 289, 29 L. Ed. 620; State v. Lehman, 100 Fla. 1313, 131 So. 533; Meyer v. Brown (Cal.) 26 Pac. 281; Rorick v. Board of Commissioners Everglades Drainage District, 57 Fed. 25, 1048, 6 R. C. L., page 325.

In the case last cited Federal Judge STRUM, in the opinion of the Three-Judge Federal Court, under Section 266 of the Judicial Code, Section 380, Title 28 U. S. C. A., says:

"Statutes under which drainage district bonds were issued, and acreage tax levied to pay them, constituted a contract, which could not be impaired by withdrawing tax legislation or diverting the proceeds for other purposes."

We shall next take up for consideration the second question involved in the adjudication of this case, that is: What is the acreage tax rate applicable in this mandamus proceeding by the relators as holders of negotiable coupon, refunding bonds issued by virtue of Chapter 10027, Laws of Florida, Acts of 1925?

A reading of the statute (Section 1164, Revised General Statutes, *supra*) and the several amendments thereto, providing for the levy of an acreage tax on the lands embraced in Everglades Drainage District, reveals that from time to time the rate of such tax has been changed by the Legislature. From the creation of the district, the rate per acre of drainage tax has been fixed by the Legislature. There is no limitation upon the power of the law makers to fix and determine the amount of such tax.

When Everglades Drainage District was established, under the provisions of Chapter 6456, Laws of Florida, Acts of 1913, *supra,* the amount of drainage tax per acre on the lands within the district was fixed by the provisions of Section 5 of the Act, and the amount of such tax on each parcel of land was doubtless fixed as nearly as possible in proportion to the benefits received by such parcel from the drainage project. At each biennial session of the Legislature, subsequent to the passage of the Everglades Drainage District Act, in 1913, up to and including the session of 1925, the Legislature, by amendments to Section 5 of Chapter 6456, Laws of Florida, codified as Section 1164, Revised General Statutes, *supra,* changed the rate of acreage tax. It also appears that at each of the biennial sessions above referred to, the Legislature passed Acts

amending Section 19 of Chapter 6456, Laws of Florida, codified as Section 1178, Revised General Statutes of Florida, *supra,* providing for the issuance of additional bonds of the district.

At the regular biennial session of 1925, the Legislature passed Chapter 10026, Laws of Florida, amending Section 1164, Revised General Statutes, as amended by Chapter 8413, Laws of Florida, Acts of 1921, and as amended by Chapter 9119, Laws of Florida, Acts of 1923, so as to fix a higher rate of drainage tax per acre, than had been previously provided. This same Act (Chapter 10026) also amended Section 1178, Revised General Statutes of Florida, so as to authorize the district to issue and have outstanding $3,000,000.00 of additional bonds.

As we have already observed in this opinion, Chapter 10027, Laws of Florida, Acts of 1925, *supra,* amending Section 1179, Revised General Statutes, *supra,* provided for the issuance of negotiable coupon refunding bonds, some of which, according to the admitted allegations of the alternative writ of mandamus as amended, are owned and held by the relators. Chapters 10026 and 10027, Laws of Florida, Acts of 1925, were both passed at the same session of the Legislature, and inasmuch as both have reference to the same general subject, and undertake to amend different sections of the Revised General Statutes, codified under the same Title and Article, they must be construed in the light of each other. It appears that Chapter 10027, Laws of Florida, authorizing the issuance of refunding bonds, and providing for the status of such bonds when issued, became a law on June 4, 1925. This was seven days prior to the date that Chapter 10026 became a law.

There is found no special provision in Chapter 10027 for a tax to pay the interest or retire the principal of the refunding bonds, that might be issued under the authority of

this law. When we construe these two enactments, Chapters 10027 and 10026, passed at the same session of the Legislature, and relating to the same general subject, in the light of each other, it is evident that it was the legislative intent that the payment of the interest and the retirement of the principal of refunding bonds, issued under Chapter 10027, would be provided for with the tax authorized in the concurrent enactment, viz.: Chapter 10026, Laws of Florida, Acts of 1925.

According to the admitted allegations of the alternative writ of mandamus as amended, the Board of Commissioners of Everglades Drainage District, on July 1, 1925, under the authority given in Chapter 10027, Laws of Florida, *supra,* issued and sold negotiable coupon refunding bonds of the district, and that certain of these refunding bonds are owned and held by the relators; that the interest of these bonds has not been paid; that there is $1,056,715.00 of interest in default and unpaid on all the bonds of the district and that $501,000.00 of principal on all bonds is in default and unpaid, and that no provision for sinking fund as required by Section 1183, Revised General Statutes of Florida, Section 1560, Compiled General Laws, is being made. From further admitted allegations of the alternaive writ of mandamus as amended, it is shown that other bonds of the district are outstanding, with maturity dates approaching, and that one judgment has already been recovered against the Board of Commissioners for a substantial sum, which remains unpaid.

Under such circumstances as these, we have already determined herein, that the relators as holders of negotiable coupon refunding bonds have vested contract rights to have the tax provided by law, *at the time their bonds were issued,* assessed, collected and disbursed, as the law requires.

The question most seriously controverted before us, is

the acreage tax which under the law is applicable, in the enforcement of the relators' contract rights, as holders of refunding bonds of the district issued July 1, 1925.

The respondents contend, in the first place, that Chapter 14717, Laws of Florida, Acts of 1931, is the law of Florida, applicable to the levy of acreage tax for Everglades Drainage District, and that such tax is the rate applicable under the relators' contract with the Board of Commissioners of Everglades Drainage District.

We consider this contention untenable, for the following reasons. Chapter 14717, Laws of Florida, Acts of 1931, was enacted long after the issuance and the sale of the bonds held by the relators. If the provisions of this subsequent Act of the Legislature in any way lessens, retards or diminishes the means of paying the interest and principal of the bonds existing at the time they were issued, then such provisions of such subsequent Act cannot control, because it would impair the obligation of the contract between Everglades Drainage District and the relators as holders of the refunding bonds in violation of Section 10, Article I, Federal Constitution.

Let us look at some of the provisions of Chapter 14717, Laws of Florida, Acts of 1931, *supra*. It undertakes to rezone the lands embraced in Everglades Drainage District, and to provide for the grouping of certain areas, to be fixed by the Board of Commissioners, into units designated as "Maintenance Units."

Sections 7 and 8 of the Act require a division of the acreage tax fixed by the same Act, into a "Debt Service Tax" and an "Administration Tax," the total of which is much less than the acreage tax authorized in either Chapter 10026, Acts of 1925, or Chapter 9119, Laws of Florida, Acts of 1923. The "Debt Service Tax" is made applicable for the payment of the principal of, and interest on, *all* ob-

ligations of Everglades Drainage District, incurred prior to that date and then outstanding, whether they are obligations for outstanding bonds or otherwise. It is also provided that the "Administration Tax" shall be used *solely* for the payment of costs of administration, for which purpose there is also provided an annual *ad valorem* tax of one mill on each dollar of valuation for State and county taxation. Under this Act of 1931 provision is also made for a "Maintenance Tax" to be fixed by the Board of Commissioners not to exceed fifty cents per acre, on all lands embraced in such "Maintenance Units" as may be created under the law. This "Maintenance Tax" is to be used *only* "for the purpose of maintaining and operating the works of the District," beneficial to the "Maintenance Unit" affected.

When the negotiable coupon refunding bonds now held by the relators were issued on July 1, 1925, Chapter 10026, Laws of Florida, Acts of 1925, *supra,* fixing the amount of the acreage tax to be annually assessed, was in effect. Section 1183, Revised General Statutes of Florida, was also in effect, its provisions being as follows:

"It shall be the duty of the State Treasurer, or his successors in office, as custodian of the funds belonging to said Board of Commissioners and the said Drainage District, *out of the taxes levied and imposed by this Article, and out of any other moneys in his possession belonging to the said Board or to the said Drainage District, which moneys so far as necessary are hereby set apart and appropriated for the purpose, to apply said moneys and to pay the interest on said bonds, as the same shall fall due and at maturity of said bonds out of said moneys to pay the principal thereof,* and there shall be and there is hereby created a sinking fund for the payment of the principal of said bonds, and the said Board *shall set apart and pay into such sinking fund, an-*

*nually out of the taxes levied and imposed by this Article, and other revenue and funds of said district at least two per cent. of the amount of bonds outstanding.* The said sinking fund for the payment of the principal of said bonds *shall not be appropriated for other purpose* than that herein specified." (Italics supplied.)

The above quoted provisions of Section 1183, as also the acreage tax provided for on July 1, 1925, entered into and, under the provisions of Section 1182, Revised General Statutes, became a part of the "irrepealable contract" between the Board of Commissioners, and Everglades Drainage District, with the relators as holders of the refunding bonds and coupons thereof issued by virtue of Chapter 10027, *supra,* on July 1, 1925.

It is further alleged in the alternative writ of mandamus as amended, that each issue of the outstanding bonds, including the refunding bonds issued July 1, 1925, was made pursuant to resolutions of the Board of Commissioners of Everglades Drainage District, in each bond referred to, and such resolutions as to each issue included the following paragraph:

"Be It Resolved, That there shall be and is hereby created a sinking fund for the payment of the principal of the said bonds, and the Board does hereby set apart and direct to be paid into such sinking fund annually, out of the taxes levied and imposed in said district and such other revenues and funds of said district, not less than two per cent. of the amount of bonds outstanding, and in and for each of the years during which said bonds shall mature there shall in addition be paid into the sinking fund, in time to reasonably pay the principal of said bonds after they mature, the amount of bonds maturing each year. The sinking fund for the payment of the principal of the said bonds shall not

be appropriated to any other purpose than that herein specified."

We see, therefore, that not only is the "irrepealable contract" provided in Section 1182, Revised General Statutes of Florida, a part of the relators' contract as bondholders, but this statute in substance has also, by resolution of the Board of Commissioners containing the above quoted language, been made a part of such contract.

In our discussion of the provisions of Chapter 14717, Laws of Florida, Acts of 1931, we have already observed that the acreage tax levied under such provisions is less than that fixed in Chapter 10026, Laws of Florida, Acts of 1925, and furthermore that the division and appropriation of such drainage tax, made in Chapter 14717, Laws of Florida, are contrary to the provisions made for the appropriation of such drainage tax money, for the retirement of bonds found in Sections 1165 and 1183, Revised General Statutes of Florida. We also call attention to the fact that the rate of certain of the acreage tax provided for in Chapter 14717, Acts of 1931, is left to the discretion of the Board of Commissioners.

Under Section 10, Article I, of the Constitution of the United States, no State can pass a law impairing the obligation of contracts.

"The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced— by which the parties can be obliged to perform it. *Whatever legislation lessens the efficacy of these means impairs* the *obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened."* State of Louisiana *ex rel.* Morris v. City of New Orleans, 102 U. S. 203, text 207 (12 Otto) 26 Law Ed. 132, text 133. (Italics supplied.)

"Conformable to the well established rule the laws which

subsist át the time and place of making the contract, enter into and form a part of it, as if they were expressly referred to or incórporated in its terms, the *obligation of a contract* is measured by the standard of the laws in 'force *at the time it was entered into,* and its *performance is to be regulated by the terms and rules they prescribe.* There can be no other standard by which to ascertain the extent of the obligation than that which the terms of the contract indicate according to their settled legal meaning." 6 R. C. L., pages 325, 326. (Italics supplied.)

"Laws requiring taxes to the requisite amount, to be collected to pay municipal bonds, which were in force when the bonds *were issued* cannot be annulled by subsequent legislation." United States *ex rel.* Hoffman v. Quincy, *supra.*

"A subsequent Act restricting the power to tax, so far as it affects bonds is a nullity." *Ibid.*

In the case of State *ex rel.* Hoffman v. Quincy, *supra,* Mr. Justice SWAYNE, in speaking for the Court, says on pages 408, 409, 18 Law Ed. (text) :

"It is also well settled that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. The principle embraces alike those which affect its validity, construction, discharge and enforcement. * * * *Nothing can be more material to the obligation than the means of enforcement.* Without the remedy the contract may, indeed, in the sense of the law, be said not to exist, and its obligation to fall within the class of those moral and social duties which depend for their fulfillment wholly upon the will of the individual. The ideas of validity and remedy are inseparable, and both are parts of the obligation which is guaranteed by the Constitution against invasion. *The*

*obligation of a contract 'is the law which binds the parties to perform the agreement.'"* (Italics supplied.)

Authorities sustaining the proposition that subsequent Acts of the Legislature cannot annul, nor diminish, retard or lessen the efficacy of prior laws entering into and forming a part of the contracts with bondholders, might be quoted from indefinitely. The following are cited as some of the decisions sustaining the rule: Galena v. Amy, 5 Wall. 705; 18 L. Ed. 560; State *ex rel.* Wolfe v. New Orleans, 103 U. S. 358, 26 L. Ed. 395; State of Louisiana *ex rel.* Southern Bank v. Pilsbury, 105 U. S. 278, 26 L. Ed. 1090; Mobile v. Watson, 115 U. S. 289, 29 L. Ed. 620; County Court of Ralls County v. Douglas, 105 U. S. 753, 26 L. Ed. 1220; State *ex rel.* Gillespie, *et al.,* v. Carlton, 103 Fla. 810, 138 South. Rep. 612, 619 (Text); Trustees of Internal Improvement Fund v. Baily, 10 Fla. 112, text 129, 131; Rorick v. Board of Commissioners of Everglades Drainage District, 57 Fed. (2nd) 1048, *supra.* Humphries v. State, 108 Fla. 92, 145 So. 858; State *ex rel.* v. St. Petersburg, 106 Fla. 742, 144 So. 313.

In the Rorick case above cited Judge Bryan, Circuit Judge, and District Judges Shepard and Strum, sitting as a statutory three-judge court for the Northern District of Florida, had before them this identical question; that is, the effect of Chapter 14717, Laws of Florida, Acts of 1931, in providing an acreage tax applicable to the contract with bondholders of Everglades Drainage District, issued prior to its enactment. In the opinion of the three judges, written by Judge Strum, they say:

"Statute fixing new district acreage taxes and creating administration fund from proceeds, held, inoperative against holders of outstanding District bonds so far as reducing or diverting tax proceeds available for payment of bonds, interest and principal,"

and again they say:

"Proceeds of administration fund, created by statute from proceeds of drainage district acreage taxes, cannot be pledged to repay money borrowed against anticipated revenues therein as authorized thereby to prejudice of bond interest and sinking fund requirements of previous Acts."

We concur in the holding of the three Federal Judges, in the case of Rorick v. Board of Commissioners of Everglades Drainage District, that the acreage tax provided in Chapter 14717, is void and ineffective insofar as it affects the contract rights of the relators as holders of bonds issued and acquired by them prior to the enactment of the law. And we further hold that the provisions of Chapter 14717, Laws of Florida, *supra,* providing for the levy, collection and disbursement of the acreage tax for drainage purposes impair the obligation of the contract of the relators as bondholders, in that they fix an acreage tax less than that provided when the bonds held by relators were issued.

The respondents next contend that if the acreage tax authorized by Chapter 14717, Laws of Florida, is not applicable, to satisfy the contract rights of the relators as holders of the refunding bonds described in the alternative writ of mandamus as amended, then the acreage tax provided in Chapter 13633, Laws of Florida, Acts of 1929, is the tax applicable to the retirement of such bond obligations held by relators.

It appears that Chapter 13633, *supra,* fixes a lower rate of acreage tax, than was levied under Chapter 10026, *supra.* Furthermore, it appears that Chapter 13633, Laws of Florida, is a companion enactment with Chapter 13711, Laws of Florida, Acts of 1929, creating "Okeechobee Flood Control District," within Everglades Drainage District. In Section 6 of Chapter 13633, it is provided that "there shall be deducted from the taxes hereinbefore provided for as

to each acre of land within said (Everglades Drainage) District, in each year, an amount equal to the sum of money levied for such year on such land as an acreage tax, under the provisions of an Act of the Legislature of Florida creating Okeechobee Flood Control District," etc. Chapter 13633, Acts of 1929, further authorized the Board of Commissioners of Everglades Drainage District to reduce the taxes levied by the Act, in each zone proportionately, to the extent of not more than twenty-five per cent. of the levy of the acreage tax provided for in the Act. The provisions, therefore, of Chapter 13633, above referred to, impair the obligation of the contract of the relators as holders of refunding bonds of the district issued on July 1, 1925, and under the authorities cited in our consideration of Chapter 14717, the provisions of said law are clearly void in that they impair the obligation of the bondholders' contracts with the Board of Commissioners of Everglades Drainage District, and with the district.

It is next contended by the respondents that if the acreage tax as provided for in neither Chapter 14717, Laws of Florida, Acts of 1931, nor Chapter 13633, Laws of Florida, Acts of 1929, is applicable to meet the contract obligations of the Drainage District, with the relators as holders of refunding bonds issued on July 1st, 1925, then the tax provided for by law, at the time of the issuance of the original bonds, to be retired with the money derived from the sale of the refunding bonds, must govern.

It is the contention of the relators, as shown from the allegations of the alternative writ of mandamus as amended, that the acreage tax required to be levied under Chapter 10026, Laws of Florida, Acts of 1925, is the acreage tax applicable to the payment of the interest and creation of sinking fund for the retirement of the principal of the refunding bonds of the Drainage District, held by them.

The respondents contend that because none of the additional bonds authorized by Chapter 10026, Acts of 1925, have been issued, therefore, the increased acreage tax provided for in the Act is not effective and cannot be enforced by the holders of bonds issued prior to the enactment, nor the holders of the refunding bonds of July 1, 1925, until such additional bonds have been issued. The respondents claim that they are supported in their position by the opinion of the three Federal Judges in the case of Rorick v. Board of Commissioners of Everglades District, *supra*. Apparently this opinion does sustain their position, Federal Judge Strum, speaking for the Court in that case, says in 57 Federal Reporter (2nd) page 1058 text:

"Nor does the issue of refunding bonds under Chapter 10027 bring into operation the increase in rates provided in Chapter 10026, so as to give plaintiffs a vested right in such increase. Chapter 10027 is not an amendment of the original Section 19, which relates to bonds and additional bonds. It is an amendment to the original Section 20, and relates to redemption (and denomination) of bonds. These refunding bonds are in lieu of other bonds outstanding under the 1923 Act and prior Acts, which former bonds were retired *pro tanto* by the proceeds of the refunding bonds. There is no authority in this Act to fund or refund any obligation of the district other than existing bonds and interest thereon. The indebtedness of the district, therefore, was not increased, nor was any additional indebtedness created by the refunding bonds. Their issue was a renewal (See Davis v. Dixon, 98 Fla. 87, 123 So. 536, text 538; State v. Weinrich, 291 Mo. 461, 236 S. W. 872) of an existing debt which had been incurred in reliance upon the rates of taxation fixed by the 1923 Act, and prior Acts. The refunding bonds are therefore not 'additional' bonds within the sense of Chapter 6957 (Section 10), Acts of

1915, so as to require the levy of 'additional' taxes, although refunding bonds are entitled to parity of payment out of the sinking fund above referred to. No specific increase in tax rates having been levied or authorized in the refunding Act, the tax levies applicable ·to the retired bonds apply also to the refunding bonds by which the former bonds were retired."

With due deference to the opinion of the learned Federal Judges and their reasoning regarding the acreage tax applicable to the payment of the interest and providing for the retirement of the principal of the refunding bonds, as set forth in the portion of their opinion just quoted, we find ourselves unable to concur in their findings on this point involved in the case.

In the first place, the learned judges seem to proceed upon the theory that the issuance of "additional" bonds by the Drainage District, as authorized first, by Section 10, Chapter 6957, Acts of 1915, the first amendment to Section 19, Chapter 6456, is the only condition upon which the Legislature may provide for an increase in the rate of acreage tax. As we see it, the amendment to Section 19, Chapter 6456, *supra,* made by Section 10, Chapter 6957, *supra,* as also each subsequent amendment thereof, authorizing "additional" bonds, it was the intention of the Legislatures to prevent the issuance of "additional" bonds, without provisions for additional tax to care for the retirement thereof, and *not* to restrict the legislative discretion in increasing the acreage tax, for other valid reasons. We find nothing in the several statutes providing for the financing of Everglades Drainage District that prevents the Legislature from at any time while in session, when in its judgment circumstances may demand, increasing the rate of acreage tax.

As we have already stated in this opinion, the rate of

acreage tax, provided in the original Act, and each amendment thereto is fixed by the Legislature. While it is true the Legislature has increased the rate of acreage tax each time, it gave authority to issue additional bonds, it cannot, in our opinion, be successfully contended that the issuance of additional bonds, is the *only* basis for any increase of such acreage tax rate by the Legislature.

Under the law, as we view it, the issuance of "additional" bonds was not, and is not, the *sine qua non* for increasing the rate of acreage tax on lands embraced in the Drainage District.

We differ from the learned Federal Judge in the portion of their opinion quoted above in another respect. We think that while the issuance of the refunding bonds, authorized under Chapter 10027, *supra,* did not add to or increase the indebtedness of Everglades Drainage District, yet the issuance and sale of such bonds *did* create new and different contracts or obligations *evidencing* such indebtedness. Under the provisions of Chapter 10027, Laws of Florida, *supra,* authorizing the refunding of the indebtedness of the district, the Board of Commissioners of Everglades Drainage District were authorized to *"borrow* money and issue in the corporate name of the said Board, *notes or negotiable coupon bonds"* of the district, to procure means to refund the original bonds sought to be retired.

When money is *borrowed* there is necessarily a contract either express or implied to pay it back. Under the law authorizing the Board of Commissioners of Everglades Drainage District to borrow money to refund the existing bonded indebtedness they were directed to, and they did, according to the allegations of the alternative writ of mandamus as amended, enter into express contracts, *viz.:* negotiable coupon bonds, evidencing the obligation of the district to pay back such *borrowed money.*

In the case of Davis v. Dixon, 98 Fla. 87, 123 So. 536, cited by Federal Judge Strum, in the portion of the opinion of the three Federal Judges hereinabove quoted, and cited in the brief of counsel for respondents, we were considering whether or not a Board of Public Instruction was authorized to issue refunding bonds of a Special Tax School District, without first having submitted the question to a vote of the qualified voters, freeholders in the district. On page 91 text, 98 Fla., we said in that case, speaking through Mr. Justice STRUM, then a member of this Court, "the issuance of refunding bonds for the purpose of discharging an existing legal indebtedness, originally incurred in accordance with the constitutional requirements, does not create *a new debt,* or impose *a new liability against the taxpayers or property within the meaning of such constitutional provision,* but merely *renews* and continues in a *changed form the original existing indebtedness* which was *originally created in conformity with the Constitution,* and that such constitutional provision therefore does not prohibit, the renewal, without a vote, of the previously existing valid debt, so long as no additional liability is created." (Italics supplied.) The constitutional provision referred to in the above quotation from the opinion of Mr. Justice STRUM was Section 17, as amended in the year 1924, of Article XII of the Constitution, wherein it was provided that Special School Tax Districts can issue bonds, whenever a majority of the qualified electors who are freeholders. shall vote in favor of the issuance of the same. We did not in that opinion hold that the refunding bonds issued did not make a new and different contract obligation between the district and a *purchaser of such refunding bonds.* We only held that there was no additional or increased indebtedness or liability created, and therefore no vote of qualified freeholders who had already voted for and

fixed the amount of bonded indebtedness, would for that reason alone, be required.

In the instant case the indebtedness evidenced by the bonds retired with the proceeds from the refunding bonds still exists insofar as the amount thereof, and the liability of the drainage district therefor is concerned; *but* it is evidenced by a new or different obligation or contract, *viz.*: negotiable coupon refunding bonds of the district, issued and sold under the authority of Chapter 10027, *supra,* to purchasers in the open market. If A, being indebted to ·B, in a certain sum, executes his promissory note payable to B for the amount, and for the purpose of retiring his note to B, A borrows a similar sum from C, executing his promissory note payable to C for the amount, and with this money retires his note to B, he does not in the transaction cancel or diminish his indebtedness or liability, he only secures a release from his obligation to B by making a new and different contract or obligation evidencing the indebtedness. C, from whom A procures the money to retire his obligation to B, is not concerned with the assets and ability of A to pay at the time he executed his note to B, but he *is* concerned with and will satisfy himself as to the assets and ability of A, at the time he executed the note to C. The situation regarding the retirement of original Drainage District bonds with the proceeds of money borrowed on refunding bonds of the district as set forth in the alternative writ of mandamus amended, before us in this case, is analogous to that given in the foregoing illustration.

In Klein v. Kinkard, 16 Nev. 194, the Court of Nevada, in an opinion involving the status of an indebtedness evidenced by a bond issue, retired by the issuance of refunding bonds, says on page 205, text:

"The proceedings by which the bonds of 1871 were re-

tired, and the three hundred and eighty thousand dollar bond, now in the school fund, issued, did not extinguish the territorial indebtedness. *That* indebtedness still exists, *but is evidenced by a different obligation.*" (Italics supplied.)

The opinion of the Three-Judge Court, in the case of Rorick v. Board of Commissioners of Everglades Drainage District, *supra,* in the portion of their opinion quoted above, further held that because Chapter 10027, Laws of Florida, *supra,* is not an amendment to Section 19 of the original Act, now Section 1178, Revised General Statutes, relating to bonds and additional bonds, but it is an amendment to Section 20 of the original Act, Section 1179, Revised General Statutes, relating to the redemption and denomination of bonds, therefore the holders of refunding bonds issued under such Act, have no vested right in the increased tax rate provided for in Section 1164, Revised General Statutes, as amended by Chapter 10026, Laws of Florida, Acts of 1925. We cannot concur with the learned Federal Judges in their holding on *this* proposition.

Section 1179, Revised General Statutes, as amended by Chapter 10027, *supra, does* carry the title of heading, "Denomination of Bonds; redemption," but, as we have already stated in this opinion, it is a part of the general scheme for the drainage and reclamation of the lands in the district, as are also each of the other sections codified under Title VII, Article IV, of the Revised General Statutes. This section of the Revised General Statutes as amended by Chapter 10027 refers to refunding the bonds issued under *"this Article,"* meaning the bonds provided for in Section 1178, Revised General Statutes, or Section 19 of the original Act as amended. It further provides with reference to the refunding bonds authorized to be issued, that "in all other respects said bonds shall in the manner of issuance

and sale be subject to the provisions of *"this Article,"* and then follows the provision that "All refunding bonds issued under authority hereof shall constitute an obligation of equal dignity with any and all other bonds heretofore, or that may be issued against and by said district." No special provision was made in Chapter 10027 amending Section 1179, Revised General Statutes, for the levy of taxes to pay the refunding bonds, issued under its authority, for the reason that provision for the levy of an acreage tax for the purpose of paying the expenses of the Board, and the sinking fund for the repayment of the "principal of the bonds that the Board may issue, under the provisions of *this Article* and to the payment of the interest thereon," had been made by Section 1178 of the Revised General Statutes, as amended, and as was being further amended at the same session of the Legislature, 1925, in Chapter 10026, *supra.* These two enactments, Chapters 10026 and 10027, were bills passed at the same session of the Legislature, relating to the same general scheme or program for Everglades drainage, and will be construed and considered in the light of each other. Milam v. Davis, 97 Fla. 916, 123 So. 668; Curry v. Lehman, 55 Fla. 847, 47 So. 78; Dade County v. Miami, 77 Fla. 786, 82 So. 354. Each of these laws became a part of the "irrepealable contract" "between the said Board and said Everglades Drainage District with the holders of any bonds and the coupons thereof issued pursuant to the provisions hereof." Evidently it was the legislative intent that the levy of acreage tax provided for in Chapter 10026 was applicable for the payment of interest and principal of refunding bonds issued under Chapter 10027. It was under the provisions of Section 1165, Revised General Statutes, 1535, Compiled General Laws, the same being the codification of Section 6, Chapter 6456, *supra,* that provision was originally made (and it has never

been changed or amended) for the use of acreage tax money to "repay loans and interest thereon and to the creation of a sinking fund for the retirement of the principal of the bonds that the Board may issue under *this Article,* and to the payment of interest thereon."

It will be noticed that it does not provide for the retirement, etc., of the bonds issued under Section 1178, Revised General Statutes, or of Section 19 of Chapter 6459, but from the proceeds of such acreage tax the retirement of all bonds issued under the provision of *this Article* (Article IV, Title VII,) are to be provided for. Section 1179 of the Revised General Statutes as amended by Chapter 10027, is a provision under *"this Article"* authorizing the issuance of bonds. It seems to us that if the tax provided for in Section 1164, Revised General Statutes, as amended by Chapter 10026, is not to be used in the retirement of bonds issued under the provisions of 10027, because specific provision to that effect is not made in the Act; then by the same token the proceeds of such tax cannot be used for the retirement of bonds issued under Section 1178 as amended by Section 3 of Chapter 10026. Nothing is said in *this* section of the law providing for issuance of *original* bonds about the levy of a tax to take care of them. But the original bonds provided for under Section 3, Chapter 10026, and the refunding bonds issued under the provisions of Section 1, Chapter 10027, are all bonds issued under the provisions of "this Article" (Art. IV, Title VII), and the provisions of Section 1165, Revised General Statutes, for the creation of a sinking fund, etc., from the acreage tax, are applicable to both.

We hold then, under the law as found in Section 1165, Revised General Statutes, that the acreage tax provided for in Section 1164, Revised General Statutes, as amended, is that tax from which provision should be made for the

retirement of the principal of, and the payment of interest on, the refunding bonds issued under Section 1179, Revised General Statutes, as amended by Chapter 10027, Laws of Florida, Acts of 1925.

. It will be seen that the learned Federal Judges hold in the above quoted portion of their opinion, found in 57 Fed. (2nd), that either the tax provided for in Chapter 9119, Laws of Florida, Acts of 1923, or Acts prior thereto, under which the original bonds retired from the proceeds of the refunding bonds were issued. is the tax that should apply in providing the sinking fund for the retirement of these refunding bonds.

. Again we find ourselves unable to agree with the holding of the three-judge Federal Court. The negotiable coupon refunding bonds authorized by Chapter 10027, Laws of Florida, Acts of 1925, and, according to the admitted allegations of the alternative writ of mandamus as amended, issued July 1st, 1925, while not creating an additional debt or liability against the Everglades Drainage District, they *do* represent a new and different obligation or contract evidencing the indebtedness. These refunding bonds issued under the provisions of Chapter 10027, Laws of Florida, are, from the date of the issuance, contracts of the Everglades Drainage District, with the holders of the bonds. The funds derived from the sale of the original bonds issued under the authority of Chapter 9119, Laws of Florida, Acts of 1923, and prior amendments to Section 1178, Revised General Statutes, may have been used to fund debts of the Everglades Drainage District, created or incurred prior to the issuance of such original bonds, but would the rate of acreage tax fixed by law at the time the funded debts were incurred by the district, be the acreage tax available to the holders of such bonds issued perhaps months

or years earlier? We think not. Neither, then, will the rate of acreage tax fixed by law at the date of the original bonds be considered a part of the contract with the holders of refunding bonds from the proceeds of which such original bonds were funded, issued months or years after the original bonds meet the tax requirement at the date such refunding bonds were issued. The refunding bonds constitute a new and different contract between the board and the Everglades Drainage District, on the one part, and the holders of the refunding bonds on the other part that became effective when the refunding bonds are issued. Suppose the law in force on July 1, 1925, the date the refunding bonds were issued, had fixed much lower rate of acreage tax than that provided for in the laws in force when the bonds retired were issued; would not the purchasers of the new or refunding bonds be bound by the acreage tax fixed by the law in force when such bonds were issued? Certainly they would. The bond holders can only insist upon the tax rate authorized by the law in force at the date of the issuance of the bonds.

At its regular session, 1927, the Legislature passed Chapter 12017, Laws of Florida, the purpose of which, as expressed in the title of the Act, was "to Amend Section 1164 of the Revised General Statutes, as Amended by Chapter 8413, Laws of Florida, Acts of 1921, as amended by Chapter 9119, Laws of Florida, Acts of 1923, as *Amended by Chapter 10026, Laws of Florida, Acts of 1925,* relating to the Levy, Assessment and Collection of Drainage Taxes in the Everglades Drainage District, to *Legalize, Validate* and *Confirm the Levy and assessment of Drainage Taxes for the years 1925 and 1926, Levied and Assessed under the Provisions of Said Chapter 10026,* etc." (Italics supplied.)

Section 2 of this Act provides that all taxes levied and as-

sessed under the provisions of the Act and under the laws of which this Act is amendatory, be and the same are hereby legalized, validated and confirmed, *including the taxes for the years 1925 and 1926;* thus carrying out the purposes to confirm the taxes levied and assessed under Chapter 10026, as expressed in the title to the Act.

"To confirm is to make firm or certain; to give new assurance of the truth or certainty; to put past doubt.— Webster. Thus, 'confirmation of land titles' within the meaning of a statute requiring such confirmation, imports some title previously existing, and the confirmation only becomes conclusive of that which it concedes existed before. * * * It makes certain; gives new assurance; puts past doubt." Words and Phrases, Vol. 2, 1st Ed.

The enactment of Chapter 12017 makes certain and puts past doubt the purpose and intent of the Legislature in levying the tax provided for in Chapter 10026, and is a legislative recognition that the tax thus levied was intended to be effective whether additional bonds were issued, as authorized, or not. It seems to us that Chapter 12017 should set at rest the effectiveness of the tax levied under Chapter 10026, as being the tax that entered into and became a part of the irrepealable contract with refunding bond holders issued July 1, 1925.

Regarding the opinion of the learned Federal Judge in Rorick v. Board of Commissioners of Everglades Drainage District, 57 Fed. (2nd), *supra,* in which they expressed the view that the tax levy provided for in Chapter 10026 was not the acreage tax entering into the contract with holders of refunding bonds issued July 1, 1925, we would make the following observations:

It appears from the statement of the case, found at page 1050, 57 Fed. (2nd), that the court was considering a suit

in equity, in which the complainants as bond holders were seeking injunctive relief against the Board of Everglades Drainage Commissioners and other officers, to restrain the effectuation of parts of Chapter 13633, Laws of Florida, Acts of 1929, and parts of Chapter 14717, Acts of 1931, which the complainants assailed, as impairing the obligation of their bond contracts, contrary to the United States Constitution, Article I, Section 10.

There is nothing in the statement of the case to indicate that they had before them any prayer for a mandatory injunction, to compel the levy of a tax, which the court found to be applicable, nor does it appear that there was any prayer that they determine the question of the proper tax to be levied to meet the contract rights of the bond holders. It would seem, therefore, that the expressions in their opinion, as to the tax they found was applicable, was an expression of opinion regarding a matter that was not before them for adjudication.

The acreage tax authorized and levied under the provisions of Chapter 10026, Laws of Florida, Acts of 1925, and which was in force on July 1, 1925, when the refunding bonds were issued, is the acreage tax which the relators, as holders of such refunding bonds are entitled to have assessed and collected, and the necessary portion of the proceeds applied toward the payment of the interest on, and retirement of the principal of such bonds. United States, *ex rel.* Von Hoffman v. Quincy, *supra;* United States, *ex rel.* Wolff v. New Orleans (U. S.), *supra;* County Court of Rolls County v. Douglas (U. S.), 105 U. S. 733, 26 L. Ed. 1220; State, *ex rel.* Pillsbury, Mayor of New Orleans, 26 L. Ed. 1090; Mobile v. Watson (U. S.), *supra;* Moore v. Otis (C. C. A. 8), 275 Fed. 747; Commissioners v. Rather, 48 Ala. 433; State, *ex rel.* Dos Amigos, Inc., v. Lehman,

100 Fla. (Part 2) 1313, 131 So. 533; State, *ex rel.* Gillespie, *et al.,* v. Carlton, *et al.,* 103 Fla. 810, 138 So. 612.

It is contended by the respondents that the relators are not entitled to the relief sought through mandamus, because of laches. We do not think the delay evidenced in this case was such as would bar the bondholders from seeking to have the Board of Commissioners of Everglades Drainage District and the tax assessors of the counties affected, perform the duties required of them with reference to the levy and assessment of this acreage tax from drainage for the year 1932. It is true that under the law the board of commissioners were required to meet on the Second Tuesday in January, 1932, and prepare the lists of land subject to drainage tax, and it is true that writ of mandamus was not sought by relators until October 1st, 1932. However, the relators had the right to presume that the Board of Commissioners, as State Officials, would do as the law directed, and that they would send in such lists. We do not consider that the relators delayed such an unreasonable length of time after being convinced the board of commissioners would not act, as to charge them with laches, and exclude them from asserting their rights under their contracts as bond holders. Neither do we think the delay has, or will cause such confusion and disorder as is contended by the respondents. Under the provisions of Section 722, Revised General Statutes of Florida, 924 Compiled General Laws, any tax assessor is authorized and required if he discovers while making his assessment that any land has for any reason escaped taxation for any or all of the three previous years, he shall, in addition to the assessment of such land for that year, assess the same separately for such year or years that they may have escaped

taxation, noting distinctly the year when such land escaped taxation.

This section has reference, of course to assessments of lands for State and county purposes. However it is, in Section 1167, Revised General Statutes of Florida, 1537 Compiled General Laws, provided as follows: "Except as herein specifically provided, all laws relating to State and county taxes in this State are hereby made applicable to the Everglades Drainage District."

The tax assessor is required under the law to assess omitted State and county taxes for three years back. There is no specific provision to the contrary in the law regarding drainage tax assessments. The assessor can certainly assess omitted lands when certified by the board of commissioners without causing undue confusion and disorder. We find nothing in the law to preclude the Board of Commissioners of Everglades Drainage District from preparing and certifying the lists of land subject to drainage tax at any time after the date fixed by Section 1167, Revised General Statutes, Section 1537, Compiled General Laws. If they fail to function in the performance of the ministerial duties required of them under the law, certainly the court can compel them by mandamus to meet and make the lists in the manner prescribed for three years back, and certify them to the tax assessors under the law governing the assessment of omitted lands for State and county taxes, which law, as we have shown, is made applicable by the provisions of Section 1167, *supra,* to drainage taxes. See also Hicks v. Cleveland (C. C. A., 4), 106 Fed. 459, and Padgett v. Post (C. C. A., 4), 106 Fed. 600.

We do not find any merit in the contention of the respondents regarding the right of the Legislature to determine and fix the rate of acreage tax according to benefits

received, as it is claimed was done in the enactment of Chapter 14717, Laws of Florida, Acts of 1931. The Legislature could not, in violation of the contract rights of these relators acquired in 1925, so change the amount of tax prevailing when the bonds were issued as to diminish or destroy the source of revenue to pay the bonds for the purpose of fixing the tax according to benefits received. Besides, it is not for the Board of Commissioners of Everglades Drainage District, but for the taxpayers therein, to raise this question, even if it can be raised as against the relators as holders of bonds issued July 1, 1925.

The personnel of the Board of Commissioners of Everglades District at the time the refunding bonds held by the relators were issued, is different from the present personnel. When the refunding bonds of 1925 were issued the board of commissioners consisted of five high State officials. Now it consists of five taxpayers residing within the district. The fact that the personnel of the board has changed, is no reason why the board as now constituted, should not perform their statutory duties, in connection with the acreage tax applicable under the law for the payment of the bonds now in question and the interest thereon. It is the opinion and holding of the court that the motion to quash the alternative writ of mandamus as amended, should be and the same is hereby denied, and it is further considered and ordered that a peremptory writ of mandamus issue, directed to the respondents, members of the Board of Commissioners of Everglades Drainage District, and to the respondent tax assessors of the counties named and described in the alternative writ of mandamus as amended, commanding and requiring the said members of the Board of Commissioners of Everglades Drainage District, in compliance with the provisions of Section 1167 of Revised General Statutes, forthwith to

meet and make up for each of said counties a list of the lands in Everglades Drainage District lying in such county, and designating upon such list or lists the amount of taxes assessed against each parcel of land for the year 1932, under the provisions of Chapter 10026, Laws of Florida, Acts of 1925, and directing and requiring them, after publication of notice as required by said Section 1167, forthwith to cause such lists to be signed by the Chairman of the Board of Commissioners of Everglades Drainage District, and attested by the secretary thereof, and forward such lists when completed, in accordance with provisions of Section 1167, Revised General Statutes of Florida, to the tax assessors of the respective counties in which the lands lie, and commanding and directing the tax assessors of the respective counties named in the alternative writ of mandamus as amended, or their successors in office, to receive the said lists for their respective counties, and that each of said tax assessors enter upon the tax roll for 1933 of the county in which he is assessor, the tax or assessment shown in the list forwarded him by the Board of Commissioners of Everglades Drainage District under this peremptory writ, for the year 1932; against the lands in said list described, in the same manner as omitted taxes for State and county are assessed. And the respective tax assessors are further directed upon the completion of the tax assessment roll for 1933, to attach to their respective rolls, before delivery thereof to the tax collectors of their respective counties, the special warrant provided for in Section 1168, Revised General Statutes, for the year 1932 drainage tax, in addition to the drainage tax that may be assessed for 1933.

ELLIS and TERRELL, J. J., and BIRD, Circuit Judge, concur.

WHITFIELD and BROWN, J. J., dissent in part.

DAVIS, C. J., and BUFORD, J., disqualified.

. WHITFIELD, J. (dissenting in part).—Complainants pray for an enforcement of the increased acreage tax levy made by Chapter 10026, Acts of 1925, to pay the past due and unpaid coupons from their *refunding* bonds of the Everglades Drainage District, dated July 1, 1925. Holders of the *refunded* bonds were entitled to an enforcement of only the smaller acreage tax levy made by Chapter 9119, Acts of 1923. See 57 Fed. (2nd) 1028.

' Where, as in this case, bonds are issued by a governmental subdivision under a statute which levies an annual tax at a specific rate, the proceeds of the tax to be used to pay the interest and to provide a sinking fund for the payment of all of the bonds issued by the taxing unit as they become due, such statutory annual tax levy and the duty and obligation to collect the tax and apply the proceeds as required by the statute, may become a part of the bond contract which may be enforced by due course of law.

The Constitution forbids the passage of a law impairing the obligation of contracts; therefore, where a specific annual tax levy is made a part of a bond contract, such tax levy cannot legally be reduced except by due consent of the bondholders, unless an *adequate fund* is produced by a reduced tax levy or is otherwise provided and secured and duly applied in payment of the interest and in providing a sufficient sinking fund as required by the statutes under which the bonds were issued. An increase in the tax levy rate may be made by a later statute and the proceeds applied in payment of the bonds and interest thereon; but such an increase of the tax rate is not a part of the bond contract that may be enforced by the bond holders as one of the bond obligations, unless it is so provided by statute. Refunding bonds take the place of the bonds refunded and have such tax obligations as may be provided by the statute authorizing

the refunding bonds. Such obligations may be the same as, or different from, that of the refunded bonds. The refunding bonds do not increase the total indebtedness; but they constitute a new contract and may have obligations peculiar to the refunding bonds though they usually have the same contract obligations that the refunded bonds had. Where a statute authorizing the refunding bonds makes them of equal dignity and payable out of the tax funds equally with all other bonds of the taxing unit, and another statute relating to the same general subject authorizes *additional*, not refunding, bonds to be issued, *provided* an accompanying increase in the annual tax rate be levied sufficient to pay the additional bonds, and the statute does not expressly or by clear implication make the increased tax rate a part of the obligation of the refunding bonds issued after the increase in the tax rate, and no *additional* bonds were issued, the *holders of the refunding bonds* are not entitled to enforce the higher tax rate for the benefit of the refunding bonds, unless so provided by law, even if the taxing unit or the State may be authorized to enforce the higher tax levy as a statutory duty. The holders of such refunding bonds are not entitled to enforce the higher tax levy, even though under the statute the refunding bonds participate in the proceeds of any tax levy made to pay any and all bonds of the taxing unit, when all the statutes providing for the issue and payment of the bonds of the taxing unit considered together indicate an express intent that when *additional* bonds are authorized, such authority shall be accompanied by an increased tax levy sufficient to meet the payments of the *additional* bonds, and when it does not appear expressly or by clear implication in the statutes that the increased tax levy shall be enforced, whether *additional* bonds are issued or not, or that the

holders of the refunding bonds are entitled to enforce the higher tax levy. While the holders of refunding bonds have no right to enforce the higher tax rate when no *additional* bonds have been issued, yet if the increased taxes are collected, the holders of the refunding bonds may have a right under the statute to participate in the proceeds of the higher taxes equally with the holders of all the bonds issued by the taxing unit.

The Everglades District Drainage District was established and its administrative and financial functions, including the issue and payment of bonds of the district, to be performed by a Board of Commissioners, were defined by Chapter 6456, Acts of 1913, and the amendments thereto which were re-enacted as Sections 1160 to 1188, Article IV, Chapter 3, Title VII, Revised General Statutes of Florida.

The amendments to sections contained in said Article IV, became a part of the Article and have such legal effect as is intended by the amendatory statutes. The intent of the amendments severally is to be determined by a judicial consideration of their terms, purpose and import.

Section 1164, Revised General Statutes, and the amendments thereof levy an annual acreage tax upon the lands in the Everglades Drainage District for drainage purposes. Section 1165, Revised General Statutes, provides that "the proceeds arising from the acreage tax levied by this Article shall be used" for drainage operations, "and to repay any loans and the interest thereon, and to create a sinking fund for the retirement of the principal of the bonds that the Board may issue under the provisions of this Article and to the payment of the interest thereon." Section 1178, Revised General Statutes, as amended prior to and by Chapter 9119, Acts of 1923, authorized the Board of Commissioners of Everglades Drainage District "to borrow money on per-

manent loans," to issue "negotiable coupon bonds" to a stated amount; but the Act does not limit the right of the Legislature to authorize additional bonds of said Board payable from drainage taxes within said district; Provided, any such additional authority shall be accompanied by the levy and imposition of additional taxes and assesments sufficient to meet the payments of the bonds authorized and interest thereon * * * and such additional bonds shall constitute an obligation of equal dignity with the bonds herein authorized and equally with the bonds herein authorized may be entitled to payment from all drainage taxes then or thereafter imposed upon the lands within the said district without preference to any bonds or series of bonds over any other bonds or series of bonds."

Chapter 10026, Acts of 1925, authorized the issue of *additional* bonds, and also increased the acreage tax levy.

Chapter 10027, Acts of 1925, amending Section 1179, Revised General Statutes, authorized the Board of Commissioners to borrow money on permanent loans, and to better enable the board to borrow money, authorized the board to issue "negotiable coupon bonds * * * to refund any of the bonds issued under the provisions of this Article or the interest thereon. * * * Said refunding bonds shall be issued in such denominations, bear such interest rate, and mature at such time or times, not exceeding thirty years from the date of issue, as said board may determine, and in all other respects, said bonds shall, in the manner of issuance and sale, be subject to the provisions of this Article. All refunding bonds issued under authority hereof shall constitute an obligation of equal dignity with any and all other bonds heretofore, or that may hereafter be, issued against and by said district." Section 1182, Revised General Statutes, enacts that "the provisions of this Article shall con-

stitute an irrepealable contract between the said board and said Everglades Drainage District and the holders of any bonds and the coupons thereof issued pursuant to the provisions hereof. Any holder of any of said bonds or coupons may either at law or in equity by suit, action or mandamus enforce and compel the performance of the duties required by this Article of any of the officers or persons mentioned in this Article in relation to the said bonds, or to the collection, enforcement and application of the taxes for the payment thereof; Provided, however, that no obligation authorized by this Article shall be construed as an obligation of this State, but only as the obligation of the Drainage District herein created."

Relators, holders of refunding bonds dated July 1, 1925, claim the right to enforce the increased acreage tax levy made by Chapter 10026, which became effective June 11, 1925, upon the. theory that such increased tax levy being in force when the refunding bonds were issued, the increased levy became a part of the "irrepealable contract" between the board and the district and the holders of the refunding bonds under Section 1182, Revised General Statutes. Statutes in force when the refunding bonds were issued may be part of the refunding bond contract *if so intended* by the statute and contemplated by the parties.

. The increased acreage tax levy made by Chapter 10026 was accompanied by authority to issue $3,000,000.00 *additional* bonds, which authority to issue *additional* bonds was expressly referred to in Section 2, Chapter 9119, Acts of 1923, and prior Acts under which other bonds had been issued; but such Chapter 9119 and the preceding Acts, in order to protect bonds issued under such statutes, provided that authority to issue additional bonds "shall be accompanied by the levy and imposition of additional taxes *suf-*

*ficient*" to pay the additional bonds, therefore the increased tax levy made by Chapter 10026 had reference to the issue of additional bonds authorized and contemplated by the same Chapter 10026. Whenever additional bonds have been authorized, an increased tax levy has been made by the same statute. See Chapters 6957, Acts of 1915, 7862, Acts of 1919, 8413, Acts of 1921, 9119, Acts of 1923. No additional bonds were issued under Chapter 10026, as was authorized and intended by the Act.

Chapters 10026 and 10027, Acts of 1925, both amend sections of the same Article IV in the Revised General Statutes, and may be regarded as being *in pari materia;* but each chapter relates to a distinct and different part of the same general subject contained in said Article IV. Neither chapter refers to the other. Chapter 10027 is expressly made a part of the refunding bond contract by being referred to in the refunding bonds and in the resolutions of the Everglades Drainage Board as being a part of the law under which the bonds were issued.

Chapter 10026 is not referred to in the resolutions or in the bonds. The statutes refer to the tax levy as being to pay all bonds issued under "this Article" of the Revised General Statutes; but the provisions of the Article under which prior bonds in stated amounts were issued, expressly provided that the issue of *additional* bonds "shall be accompanied by the levy and imposition of additional taxes and assessments sufficient to meet the payment of the bonds authorized and interest thereon." Chapter 10027 provides that the refunding bonds shall in the manner of issuance and sale be subject to the provisions of this Article"; and the refunding bonds shall constitute an obligation of equal dignity with any and all other bonds," etc.

Refunding bonds issued under Chapter 10027 are of

"equal dignity" with all other bonds of the district; but the holders of refunding bonds have no superior right over other bond holders to enforce an increased tax levy merely because the increased levy had been made by Chapter 10026 before the date of the refunding bonds, when the statutes authorizing the original bonds issues, required an increased tax levy to accompany every issue of *additional,* not *refunding,* bonds, and Chapter 10026 which made the increased tax levy also provided for the issue of *additional* bonds. Clearly, the intent of Chapter 10026 amending sections of Article IV, Revised General Statutes, was that the increased tax levy was to provide for the payment of the *additional bonds* that were authorized and contemplated by the same Chapter 10026 to be issued as authorized. The parties to the refunding bond contract—the officials who issued the bonds and the purchasers of the refunding bonds —could not reasonably have contemplated that the increased tax levy made by Chapter 10026 could be enforced by the holders of the refunding bonds if *additional* bonds were not issued as authorized and contemplated by Chapter 10026, the increase in the tax levy being made by the same Chapter 10026.

If the increased tax levies may legally be enforced by the State or by the district, the refunding bonds will, under the statute, participate in the proceeds equally with all other bonds; but that does not give the holders of the refunding bonds issued under Chapter 10027 a right to enforce the increased tax levies made by Chapter 10026 when no *additional* bonds have been issued as provided for and contemplated by Chapter 10026.

"No specific increase in tax rates having been levied or authorized in the refunding Act, the tax levies applicable to the retired bonds apply also to the refunding bonds by

which the former bonds were retired." Rorick v. Board of Commissioners, 57 Fed. (2nd) 1048, text 1058.

Under the statute all the bonds issued by the district participate in the proceeds of an increased tax levy on an equality. Chapter 10026 provides for the issue of both *additional* bonds and *increased* acreage taxes, thereby indicating that the increased taxes were levied not for the benefit of refunding bonds, but for the payment of the *additional* bonds ᛫that were authorized and contemplated᛫ by the Act to be issued "for the purpose of raising funds to continue and prosecute to final completion the drainage operations. Even if the State or the Board of Commissioners of the district might require the increased acreage tax levy of 1925, to be executed as a statutory duty, yet the increased acreage tax levy was made by Chapter 10026 not for the benefit of any outstanding bonds, or of refunding bonds to be issued and sold for the redemption of outstanding bonds, but in anticipation of the issue of *additional* bonds as authorized to *continue the drainage operations,* which increased levy would inure to the benefit equally of all the bonds of the district if additional bonds be issued as contemplated. Proceeds of additional bonds would go to the benefit of drainage operations to compensate for the increased tax levy. As no additional bonds have been issued under Chapter 10026, the increased tax levies, made by Chapter 10026, did not become a part of the contract of the refunding bonds dated July 1, 1925; therefore the holders of such refunding bonds are not entitled to enforce the increased tax levy of 1925, but are limited to the tax levy of 1923, even if the State or the Board might legally enforce the higher tax levies of 1925, in which case all the bonds of the district would participate equally. And this is so even after the enactment of Chapter 12017, Acts of

1927, which validates the tax levy but does not make the increased levy a part of the *refunding* bond contract.

The provisions of Chapter 10027 do not make any statutory tax levy a part of the refunding bond contract except such tax levies as were part of the contract of other bonds issued by the district. Refunding bonds take the place of the bonds that are refunded and carry the same contract obligation as did the refunded bonds, unless otherwise clearly provided. Chapter 10026 was not in force when Chapter 10027 became effective, and though both statutes amend provisions of Article IV, Chapter 3, Title VII of the Revised General Statutes, only Chapter 10027, effective June 4, 1925, is expressly referred to in the refunding bonds dated July 1, 1925; and the subject and terms of Chapter 10026 which became effective June 11, 1925, do not indicate that its intent is to make the increased tax levy made therein, *a part of the contract of refunding bonds* which were authorized by Chapter 10027, so as to entitle the holders of such refunding bonds to enforce the increased acreage tax levies, at least unless *additional* bonds, as authorized and contemplated by Chapter 10026 to be issued, are duly issued. The intent of Chapter 10026 is to comply with the requirement of Chapter 9119, Acts of 1923, and those prior thereto under which bonds of the district were issued, that authority to issue additional bonds shall be accompanied by a levy of increased taxes sufficient to pay the additional bonds.

Sections 1165 and 1183, Revised General Statutes, and the resolutions of the Board of Commissioners of Everglades Drainage District similar thereto, relate to the uses of the proceeds of tax levies and other sources of revenue of the district, but do not regulate the obligations of bond issues.

On June 15, 1925, the Board of Commissioners of Everglades Drainage District in adopting resolutions for the issue of bonds *to refund* stated prior issues of bonds of the district, stated in a preamble to the resolutions that:

"The Board deems it advisable for the best interest of said District to refund all of the foregoing bonds by the issuance of a like amount of refunding bonds bearing a lower rate of interest, and extending the maturity of said bonds so that only a comparatively small amount, if any, will have to be paid off within the coming ten years, and thereby provide more money out of the taxes already levied with which to carry on needed construction work." and resolved that:

"Said bonds shall recite that they are issued under, pursuant to, and in full compliance with the Constitution of the State of Florida and the Statutes of said State, including among others Chapter 10027, approved June 4, 1925, and Acts amendatory thereof and supplemental thereto, and shall pledge the faith and credit of the Board of Commissioners of Everglades Drainage District for the prompt payment of the principal and interest thereof."

In accordance with the resolutions under which they were issued, each refunding bond contains the following:

"This bond is issued for the purpose of refunding certain valid, existing and outstanding bonded indebtedness of said District, under and pursuant to, and in full compliance with the Constitution of the State of Florida and the Statutes of said State, including among others Chapters 10027, approved June 4, 1925, and Acts amendatory thereof and supplemental thereto, and in pursuance of resolutions and proceedings of the Board of Commissioners of Everglades Drainage District duly had and adopted * * * and the full faith, credit and resources of said Board of Commissioners

of said District are hereby pledged for the punctual payment of the principal and interest of this bond."

The Constitution of the State of Florida does not provide for or regulate the issue or the payment of bonds of a drainage district, though the Constitution does regulate the enactment of statutes and forbids an impairment of the obligation of contracts and requires due process of law. The validity of statutes is not involved here.

While it is stated in the bonds that they are issued "under and pursuant to, and in full compliance with * * * the statutes of the State, including among others Chapter 10027, approved June 4, 1925, and Acts amendatory thereof and supplemental thereto," "the statutes * * * and Acts amendatory thereof and supplemental thereto" that are referred to are those which relate to the same branches of the general subject of Article IV, Chapter 3, Title VII, Revised General Laws, *viz:* the issue and the obligations and payment of the previous original bonds and the instant refunding bonds. This is given emphasis by the words, "including among others, Chapter 10027, Approved June 4, 1925," which Chapter relates to *refunding* bonds, and by not also referring to Chapter 10026, approved June 11, 1925, which does not relate to *refunding* bonds, but to *additional* bonds and to an increased acreage tax levy, such latter Chapter being also in force when the refunding bonds were issued, dated July 1, 1925. The refunding bonds were not issued "under, pursuant to, and in full compliance with" Chapter 10026, for that chapter relates to *additional* bonds and to an increased acreage tax levy; but the *refunding* bonds were issued under Chapter 10027, predicated upon the same tax levy of Chapter 9119, Acts of 1923, which became a part of the contract of the bonds that were refunded when ad-

ditional bonds were issued under Chapter 9119, as provided therein.

Chapter 10026, authorizing the issue of *additional* bonds and making an increased levy of acreage taxes, repeals all laws and parts of laws in conflict with the provisions of the Act, but such repeal does not affect the rights of holders of the original bonds and the refunding bonds to enforce the acreage tax levy made by Chapter 9119, Acts of 1923, which, upon the issuance of additional bonds thereunder, became a part of the contract obligation of the original bonds that were refunded as well as of the refunding bonds that were issued to redeem the original bonds of the district.

In other respects, the opinion prepared by Judge .CAMP-BELL is concurred in.

BROWN, J., concurs.

BIRD, Circuit Judge (concurring).—I concur in the opinion written by Judge CAMPBELL in this case. I have hesitated in concurring with his conclusion that relators are entitled to a peremptory writ commanding the levy of acreage tax provided for in Chapter 10026, Acts of 1925. At first I was inclined to the belief that it was the intention of the Legislature that the provision of Chapter 10026, providing for the higher acreage tax, would not come into effect until the additional bonds or some of them therein mentioned were issued and sold; however, I can find nothing in either Chapter 10026 or Chapter 10027, which would indicate such intention. When the refunding bonds were issued and sold on the first day of July, 1925, Chapter 10027, Acts of 1925, was a law and was the authority for their issuance, and Chapter 10026, Acts of 1925, was likewise a law and the only law then in effect, to which the holders of the bonds could look for funds to pay their principal and interest, since Chapter 10026 amended and superseded

all prior laws imposing an acreage tax. It appears to me that one of the purposes of the Legislature in passing Chapter 10026 was to make more salable the refunding bonds provided for in Chapter 10027; there is no indication in either Chapter 10026 or Chapter 10027 that the acreage tax provided in Chapter 10026 would not become effective until the additional bonds or some of them mentioned therein were issued and sold.

The Legislature, in its session of 1927, enacted Chapter 12017, which is an Act relating to the Everglades Drainage District, the purpose of which, as expressed in its title, among other things, was "to Legalize, Validate and Confirm the Levy and Assessment of the Drainage Taxes for the Years 1925 and 1926, Levied and Assessed Under the Provisions of Said Chapter 10026. * * *" This purpose is carried into effect in the body of the Act.

The enactment of this last-mentioned statute is some indication of the original legislative intent that Chapter 10026 was to be a part of the refunding bond contract, and such construction appears to have been adopted by the parties.

I have also hesitated in agreeing with Judge CAMPBELL's opinion on this point out of deference to the opinion of the three Federal Judges, as expressed by Judge STRUM in the case of Rorick v. Board of Commissioners of Everglades Drainage District (D. C.) reported in 57 F. (2d) 1048, but, upon a careful examination of this case, it is apparent to me that the three Federal Judges were not called upon to decide the question here involved.

ORDER ENTERED MAY 17, 1933.

PER CURIAM.—It is considered, ordered, and adjudged that the order and judgment entered herein, April 7, 1933, be amended so as to read as follows: The motion to quash the alternative writ of mandamus, as amended, is denied;

and the respondents are allowed sixty days in which to answer.

It is so ordered.

WHITFIELD, TERRELL and BROWN, J. J., and BIRD, Circuit Judge, concur.

Opinion Filed November 17, 1933.

A case of original jurisdiction.—Mandamus.

*Watson & Pasco & Brown,* for Relators;

*Evans, Mershon & Sawyer, D. L. Southard* and *Nathan Cockrell, Carter & Yonge, Bedell & Bedell,* and *Thomas Mc. E. Johnston* and *Stapp, Gourley, Viney & Ward,* for Respondents.

CAMPBELL, Circuit Judge.—On April 7, 1933, we rendered a decision and made an order herein overruling the motion to quash the alternative writ of mandamus. Permission was granted respondents to file a further return, and on the 19th day of July, 1933, they filed their answer and return containing twenty-three paragraphs. The relators have filed general and special demurrers to the answer and return, and also motions to strike certain paragraphs thereof. These are now before us for consideration.

The demurrers attack the answer as a whole, and also each paragraph thereof that does not specifically and unqualifiedly admit allegations of the alternative writ of mandamus.

The respondents, in their answer and return, have undertaken to set forth many of the contentions urged and questions raised by them on their motion to quash the alternative writ of mandamus. These questions have been reargued, and again thoroughly briefed by the counsel representing the respondents. However, we do not find anything presented in the argument at this hearing, nor in the carefully prepared briefs of the able counsel representing the re-

spondents, to cause us to change our views or to reverse our holdings on the propositions raised by the motion to quash the alternative writ of mandamus. Our holding as to the constitutionality of the statutes and our construction of the statutes in the opinion rendered on the motion to quash the alternative writ of mandamus have therefore become and are the law of the case regarding these matters.

The demurrers to and the motions to strike those paragraphs of the answer and return which undertake to raise again the propositions decided in the opinion rendered on the motion to quash the alternative writ, are well taken, and are therefore sustained, and such paragraphs are stricken.

In paragraphs 3, 4, 22 as amended, and 23, of the answer and return, the respondents undertake to plead certain matters of defense or, which they claim should bar the issuance of a peremptory writ of mandamus, that were not raised before us and passed upon in our consideration of the motion to quash the alternative writ.

The demurrers and motions to strike are directed at and attack the sufficiency of the allegations of each of these paragraphs as constituting a defense, or bar to the issuance of a peremptory writ, on the facts alleged in the alternative writ of mandamus.

In paragraph three of the answer and return the respondents seek to set up as a bar to the issuance of a peremptory writ of mandamus the fact that the Trustees of the Internal Improvement Fund of the State of Florida hold drainage tax sale certificates for large amounts which they have not paid, nor have they paid the drainage tax accruing against the land after the expiration of two years from the date of such certificates. It is claimed that because of the failure of the trustees to pay such amounts to the Board of Com-

missioners of Everglades Drainage District, they, the respondents, should not be required to prepare the lists of land for the assessment and levy of the drainage tax for the year 1932 as they are commanded to do under the provisions of Section 1167, Revised General Statutes of Florida, Section 1537, Compiled General Laws.

It is further set up in paragraph three of the answer and return that the Three-Judge Statutory Federal Court for the Northern District of Florida, in the case of Rorick, et al., v. Board of Commissioners of Everglades Drainage District, et al., 57 Fed. (2nd), page 1048, has held that the provisions of Chapter 14717, Laws of Florida, Acts of 1931, requiring that all drainage tax sale certificates held by the Trustees of Internal Improvement Fund, be transferred to the Board of Commissioners of Everglades Drainage District, is unconstitutional and void in so far as they affect the holders of bonds issued prior to the Act. It is also, in substance alleged, that, in the said decision of the Three-Judge Federal Court, above referred to, it was held that under the provisions of Section 12, Chapter 6456, Laws of Florida, Acts of 1913, as amended by Chapter 7305, Laws of Florida, Acts of 1917, it is made the duty of the Trustees of the Internal Improvement Fund to pay cash immediately for the taxes on all lands bid off at drainage tax sales by the tax collectors of the counties embraced in whole or in part in said Everglades Drainage District. It is further claimed that the said decision of the Three-Judge Federal Court held that the Trustees of Internal Improvement Fund are required to pay the drainage taxes to Everglades Drainage District upon all such lands bid in for them by the tax collectors after two years from the date of the tax sale certificates. It is then alleged in substance that the drainage tax sale certificates held by the Trustees of the Internal

Improvement Fund together with the interest, and the subsequent tax accrued on all such lands amounts to about $5,000,000.00; and that *if* the Trustees of the Internal Improvement Fund would pay such sum to the Board of Commissioners of Everglades Drainage District there would be no necessity for the assessment of the drainage tax, as the respondents would have funds sufficient to pay the past due principal and interest on the bonds held by the relators and others.

Even if we should hold that the Trustees of the Internal Improvement Fund were, and are, required, under the law, to pay cash for all lands bid off for said trustees by the tax collectors, and that the same should be paid immediately as is required of individual purchasers at such tax sales, and even if we should hold that the Trustees of the Internal Improvement Fund are required to pay to the Everglades Drainage District, the drainage taxes on all lands described in tax certificates held by them, after the date of the vesting of title in them under the statutes; and even if it should be shown that large sums are now due by the trustees, to the Everglades Drainage District as alleged in the answer, it would not, in our opinion, excuse the failure of the Board of Commissioners of Everglades Drainage District to make up the lists of lands upon which drainage tax has been levied and assessed by statute, and as they have been directed to do in the alternative writ of mandamus herein.

The Legislature determines and fixes the rate and amount per acre of the drainage tax. As we have held in the opinion rendered herein, on the motion to quash, the rate and amount of acreage tax, fixed by Chapter 10026, Laws of Florida, Acts of 1925, is the rate which the relators as

holders of refunding bonds are entitled to have levied and assessed and entered on the tax rolls.

Under the provisions of Section 1167, Revised General Statutes, Section 1537, Compiled General Laws, the Board of Commissioners of Everglades Drainage District are required to make up the lists of lands upon which the tax is levied and assessed, and certify, to the tax assessors of the several counties embraced in the district, to be entered on their respective tax rolls.

The mere fact, if it is a fact, that under the law the Trustees of the Internal Improvement Fund have moneys belonging to the Everglades Drainage District, or, are indebted to such district in an amount sufficient to pay all the principal and interest of outstanding bonds of the district, will not, in our opinion, excuse respondents in failing to perform the ministerial duty clearly imposed upon them by Section 1167, *supra*.

There is nothing set up in paragraph three which under the law will excuse the respondents from obeying the command of the alternative writ of mandamus. The demurrer, therefore, and the motion to strike this paragraph of the return must be sustained and the paragraph stricken.

Paragraph four of the answer and return undertakes to set up, as a reason for not obeying the mandate of the alternative writ of mandamus, the provisions of sub-paragraph (h) of Section 2 of Chapter 14717, Laws of Florida, Acts of 1931. This is the section of the statute making the State Treasurer Ex-Officio Treasurer of Everglades Drainage District and making him, as such, custodian of all the moneys, securities and bonds belonging to the Everglades Drainage District. Also providing for the paying out of such funds, upon the warrant of the Board of Commis-

sioners of Everglades Drainage District signed by proper officers of the Board.

We find nothing in paragraph four of the answer and return to legally prevent or excuse the respondents from obeying the commands of the alternative writ. The demurrer to this paragraph of the answer and return is therefore sustained and the paragraph stricken.

In Paragraph 22 of the answer and return the respondents undertake to show their *inability* to comply with the command of the alternative writ of mandamus. If the allegations of fact found in the answer are sufficient to show that the respondents *cannot legally comply with the mandate of the alternative writ* and with the statuory requirements of Section 1167, Revised General Statutes, then the answer or return is sufficient, and a peremptory writ of mandamus would not issue to compel the Board of Commissioners of Everglades Drainage District to do an impossible act, or an act which, under the law they cannot perform. If such is the case the demurrer to the paragraph must be overruled. We should therefore examine the allegations of this paragraph with the amendment thereto for the purpose of ascertaining whether or not the allegations of fact, therein contained, are sufficient to show the legal *inability* of the respondents to obey the command of the alternative writ, and to perform the ministerial duties required of them under the provisions of said Section 1167, Revised General Statutes of Florida, Section 1537, Compiled General Laws, *supra*.

The paragraph of the answer now being considered, alleges in part the following:

"Further answering, respondents say they are unable to perform the command of the alternative writ, and are utterly unable to make up tax lists or assessment rolls, or to publish

notices required by law to be published, or to hold a meeting or meetings, or to mail the tax lists or assessment rolls to the tax assessors of the counties lying wholly or partly within Everglades Drainage District, or to pay the tax assessors for extending the taxes of Everglades Drainage District upon the county tax rolls of their respective counties, for the reason that the Board of Commissioners of Everglades Drainage District is without funds so to do. That all proceeds of Everglades Drainage District taxes, and also all other moneys of the Board of Commissioners and of Everglades Drainage District are paid to W. V. Knott, as Treasurer of the State of Florida, as custodian of the funds of said district, to be disbursed upon proper warrant or warrants as aforesaid; that the only means the Board of Commissioners of Everglades Drainage District has of obtaining funds for meeting expenses, is by warrant on said W. V. Knott, Treasurer of the State of Florida, as custodian of the funds of Everglades Drainage District. That on May 19, 1931, in the United States District Court for the Northern District of Florida, a bill was filed by H. C. Rorick, Walter H. Lippincott and J. R. Easton by their solicitors, Wm. Roberts and Watson, Pasco & Brown, against the Board of Commissioners of Everglades Drainage District, the members thereof, and others, for the purpose, among other things, of enjoining the Board of Commissioners of Everglades Drainage District from preparing tax lists unless they should include the drainage tax levied at the rate set forth in Chapter 10026, Acts of 1925, and of enjoining the Treasurer of the State of Florida, as custodian of the funds of the Everglades Drainage District, from applying any funds, except in payment of principal and interest of bonds. A supplemental bill was filed in said cause by the plaintiff on July 4, 1931, whereby the enact-

ment of Chapter 14717, Acts of 1931, was alleged, and the same relief prayed as in the original bill."

. Continuing, paragraph 22 of the answer and return alleges in substance, that on January 4, 1932, the application of plaintiff, for injunction, referred to above, came on to be heard before the court composed of Honorable NATHAN P. BRYAN, Judge of the Circuit Court of Appeals, Fifth Circuit, Honorable WILLIAM B. SHEPPARD, Judge of the United States District Court of the Northern District of Florida, and Honorable LOUIE W. STRUM, United States District Judge of the Southern District of Florida, and that on April 13, 1932, said court handed down an opinion (57 Fed. [2d] 1048) in which it "expressed the view" that the proceeds from acreage taxes and other funds of the district, except the ad valorem tax under the Acts of 1921, are specially appropriated and pledged to the extent necessary to pay bonds and interest, also the following:

"It is the duty of the State Treasurer and of the Board of Commissioners to devote the said funds to the purposes named, as far as may be necessary, before any part thereof for any other purpose."

It is then, in substance, further alleged, that since the filing of the said opinion in the Federal Court mentioned above, the said W. V. Knott, State Treasurer, as custodian of the funds of Everglades Drainage District has *declined* to honor any warrants drawn on him as such officer, and has declined to disburse any money at all for the *administration or maintenance of the district, or to pay any of the employees of the district, or for the payment of any of its obligations, or to meet any of its expenses, or for any other purposes.* (Italics supplied.)

It is further alleged, in substance, that after the opinion of the Three-Judge Federal Court already referred to herein,

H. C. Rorick, Walter H. Lippincott and J. R. Easton, to effect a collection of a judgment, recovered by them against the Board of Commissioners of Everglades Drainage District in the sum of $184,349.00, secured the issuance of an alternative writ of mandamus in the District Court of the United States, Northern District of Florida, directed to W. V. Knott, Treasurer of the State of Florida as custodian of the funds belonging to the Board of Commissioners of Everglades Drainage District, and to said district, which writ was duly served on said W. V. Knott in his official capacity, and that he duly filed his answer and return to said alternative writ in which he alleged that on May 31, 1932, the date the alternative writ was served on him, he had on hand as custodian of the funds of Board of Commissioners of Everglades Drainage District the sum of $68,375.86. That a demurrer to this return and answer was sustained by the Honorable W. B. SHEPPARD, Judge of the said court, and a final judgment was entered directing the issuance of a peremptory writ of mandamus requiring the respondent W. V. Knott, in his official capacity to pay over to the relators in said proceeding, upon their judgment so much of the proceeds of the taxes levied and imposed by Chapter 6456, Laws of Florida, Acts of 1913, and Acts amendatory thereof, and so much of any other moneys in the possession of the respondent at the time of the service of the alternative writ of mandamus, belonging to the Board of Commissioners of Everglades Drainage District, or said district, as might be necessary to pay the judgment held by the relators.

It is further set forth that the respondent W. V. Knott, in his official capacity, perfected his appeal from this judgment to the United States Court of Appeals for. Fifth Circuit, which appeal is still pending.

.The securing of the issuance of a second alternative writ of mandamus out of the United States District Court of Northern District of Florida on May 27, 1933, by the relators H. C. Rorick and others against said W. V. Knott, in his official capacity, is also set forth in paragraph 22 of the return. This alternative writ of mandamus, it is alleged, was secured on May 29, 1933, and that by it the relators were seeking to "tie up" any additional funds which might have been received by the said W. V. Knott, as custodian of the funds belonging to the Board of Commissioners of Everglades Drainage District, or the said district. That a motion to dismiss said second alternative writ is now pending in said Federal Court.

After reciting the foregoing matters and proceedings, the respondents conclude paragraph 22 of their answer and return with the following allegations:

"And so it is that the Everglades Drainage District and the respondents herein are wholly without money which can be used for postage, clerical help, office expenses, administration costs, expenses of materials, legal services and for any other purposes whatsoever; that the preparation of tax lists would require the services of one person and a helper thoroughly familiar with land descriptions in Everglades Drainage District and its tax system, for from two to six days, and four typists for from two to six days; that the materials required for the preparation of lists, including paper, pencils, etc., would be considerable; that the mailing of notices to papers for publication would require postage; that before publication could be completed, advertising costs would have to be paid; that checking of proofs of publication would require the services of one person for approximately a week; that notice of the meetings of the Board to hear complaints concerning the lists would have to be

mailed out by the board; that the board would be required to hold a meeting and the expenses of attendance to the members thereof would be considerable, in that it would require travel by the members as follows: Marcus A. Milam, 140 miles; Ralph A. Horton, 94 miles; W. H. Lair, 100 miles, T. W. Weeks, 170 miles. That upon approval of the lists they would have to be forwarded to the county tax assessors of the said respective counties, and postage paid thereon; and the assessor would be required to be paid, for extending the taxes on the county tax rolls, and their fees therefor would exceed $10,000.00. That the board has no funds available with which to meet and pay any of said expenses, and is therefore totally unable to prepare tax lists or to have same published as required by Section 1167, or any other Act, or to forward said lists to the respective tax assessors as required by said alternative writ, or to pay the said tax assessors for extending the taxes upon their respective tax rolls."

By leave of the court, on the day the demurrer and motions to strike the answer and return were heard, the respondents amended paragraph 22 of the return by adding the following:

"That the inability of respondents to perform the command of the alternative writ is of long standing, that the general conditions set forth in this paragraph existed long before the institution of this suit and were well known to the relators; that the respondents are willing and desirous to levy the taxes required by law, all of which more fully appears by a resolution adopted by the Board of Commissioners of Everglades Drainage District, July 18, 1932, a certified copy of which is attached hereto marked Exhibit J, and by reference made a part hereof as fully as if here set forth in *extensio.*"

Paragraph 22 with the amendment thereto undertakes to set up matters in confession and avoidance. This Court has held that great strictness of pleading is required in returns to alternative writs of mandamus which set up matters of confession and avoidance. See State, *ex rel.* v. Jacksonville, 22 Fla. 21, State, *ex rel.* v. Atlantic Coast Line Railroad Co., 97 Fla. 816, 122 So. 256.

In State, *ex rel.* v. Bloxham, 33 Fla. 482, 15 So. 227, we held as follows:

"A return in confession and avoidance must set up in *detail every fact necessary to establish the avoidance. Allegations of ultimate conclusion of fact not sufficient."* (Italics supplied.)

"The return must not set up conclusions of law." Ray v. Wilson, 29 Fla. 342, 10 So. 613.

In the case of State, *ex rel.* v. Seaboard Air Line Railroad Co., 92 Fla. 1143, we held that:

"A return to sufficient writ of mandamus must state all facts relied upon by respondent with such *precision* and *certainty* as fully to advise the court of all the particulars necessary to enable it to pass upon the sufficiency of the return, and its statements cannot be supplemented by inference or intendment." (Italics supplied.)

We will now examine the allegations of paragraph 22 of the answer and return, in connection with applicable Everglades Drainage District statutes, applying to the principles enunciated by us in our previous decisions referred to above, and determine the sufficiency of such allegations as a defense or bar to the granting of a peremptory writ, or if the matters set up in the allegations of this part of the return and answer are sufficient to show a real and legal inability of the respondents to comply with the commands of the alternative writ of mandamus.

It appears that the inability relied upon by respondents is the lack of funds to enable them to obey mandate of the alternative writ and to comply with the requirements of Section 1167, Revised General Statutes, Section 1537, Compiled General Laws, *supra.* It is alleged that funds are necessary to secure the necessary *"postage, clerical help, office expenses, administration costs, expense of meeting or meetings* and *legal services;*

"That the preparation of the tax lists would require the services of one person and a helper thoroughly familiar with land descriptions in Everglades Drainage District and its tax system, for from two to six days and four typists for from two to six days. That the materials required for the preparation of tax lists, including paper, pencils, etc., would be considerable; that the mailing of notices to papers for publication, would require postage; that before publication could be completed, advertising costs would have to be paid; that checking of proofs of publication would require the services of one person for approximately a week; that notice of the meetings of the board to hear complaints concerning the lists would have to be mailed out by the board; that the board would be required to hold a meeting and expenses of attendance of the members thereof would be considerable."

"That upon approval of the lists they would have to be forwarded to the county tax assessor of said respective counties, and postage paid thereon; and the assessors would be required to be paid for extending the taxes on the county tax rolls, and their fees therefor would exceed $10,000.00."

It is claimed that the board of commissioners has no funds *available* with which to meet and pay any of the foregoing items of expense, and is *"therefore totally unable to prepare tax lists or to have them published as required*

*by Section 1167 or any other Act, or to forward said lists
to the respective tax assessors as required by said alternative
writ, for extending the taxes upon their respective tax
rolls."* (Italics supplied.)

. This lack of funds, as will be seen, is explained by al-
leging that W. V. Knott, State Treasurer, is by statute made
the custodian of all funds, securities, bonds, etc., belonging
to the Everglades Drainage District whether derived from
drainage tax or otherwise, and that no moneys can be paid
out by him for any purpose except upon warrant or war-
rants signed by certain officials of the board; and that be-
cause in a certain decision of the Three-Judge Federal Court
for the Northern District of Florida, in the case of Rorick,
*et al.,* v. Board of Everglades Commissioners, *et al.,* 57 Fed.
(2d), *supra,* the court "expressed the view" that the pro-
ceeds from acreage taxes and other funds of the district,
*except the ad valorem tax under the Acts of 1921,* are spec-
ially appropriated and pledged to the extent necessary to
pay bonds and interest and further said, "it is the duty of
the State Treasurer and board of commissioners to devote
the said funds to the purposes named as far as may be
necessary before any part thereof for any other purpose."
And further because of a certain writ of mandamus issued
out of the United States District Court, Northern District
of Florida, in favor of said Rorick, *et al.,* requiring said
W. V. Knott, as Treasurer, to pay the funds held by him as
custodian of the funds of Everglades Drainage District,
toward satisfying a judgment recovered by said Rorick,
*et al.;* and further because the said W. V. Knott, State
Treasurer, as custodian of the funds of Everglades Drain-
age District, has *declined* to *honor any warrants* drawn on
him as such officer, and has *declined* to disburse any money

at all for *administration* or *maintenance* of the district, or for the payment of any obligation, etc.

In the first place, let us examine the law, and see if it was the legislative intent that the moneys be in hand, for all the purposes mentioned by the respondents, before the preparation of drainage tax lists. Evidently it was not contemplated for the years 1913 and 1915.

As has already been observed, in this case, the Everglades Drainage District was organized and formed by the provisions of Chapter 6456, Laws of Florida, Acts of 1913. Section 8 of this Chapter provides as follows:

"At such first meeting of the said board, and thereafter the second Tuesday in January of each year the said *board* shall prepare for each county in which said district may lie, in whole or in part, a list of the lands lying in such county and embraced in said drainage district, etc."

This section of Chapter 6456, *supra,* has been amended from time to time and prior to and since July 1, 1925, with such amendments codified as Section 1167, Revised General Statutes of Florida. The "first meeting of the board" referred to in Section 8, Chapter 6456, *supra,* was a meeting that was called as "soon as practicable after the passage of the Act." See Section 7, Chapter 6456, *supra.* There were evidently no funds in hand at *that* time, to pay for *postage, clerical help, office expenses, costs of meetings,* nor experts to prepare the tax lists nor for publishing notices, etc. There is nothing in the Act to manifest any intent that there be funds in hand for these or other purposes, in advance of the performance of the duties required of the board of commissioners, in the preparation, publication, etc., of the tax lists.

It appears to have been the intention of the lawmakers that if funds were necessary to take care of any of these

preliminary steps for getting the acreage taxes properly on the tax rolls, they could be raised through temporary loans. Section 18 of Chapter 6456, *supra,* provided as follows:

"The said board is hereby authorized and empowered *in order to provide for the work described in this Act, to be performed, to borrow money temporarily* from time to time *for a period not exceeding one year at any one time and to issue its promissory notes therefor,"* etc. (Italics supplied.)

This same provision is brought forward as Section 1177, Revised General Statutes of Florida.

Section 6, of Chapter 6456, the Everglades Drainage District Act, provides that among other uses to be made of the acreage tax levied by the Act, the board might use it "to purchase lands or personal property as the board may deem necessary to carry out the purposes of this Act, *and to the expenses of the board in the conduct of said work and its business generally and to repay any loans and the interest thereon,"* etc.

In other words, while there were no funds on hand for the starting of the machinery of the Everglades Drainage District, the Board of Commissioners of Everglades Drainage District were given a credit, by being empowered to borrow money *temporarily,* for emergencies, so to speak, and these loans were backed by, and to be repaid from, the proceeds of acreage taxes collected after the preparation of tax lists, the entry thereof on the tax roll of the several counties and the taxes collected.

These provisions for "temporary loans," for the payment thereof, and for the payment of the general expense of the board of commissioners, from the taxes, are still in effect. See Sections 1165 and 1177, Revised General Statutes of Florida, Sections 1535 and 1552, Compiled General Laws of

Florida. In addition to these provisions for the making and of payment of "temporary loans," and for the payment of general expenses of the board in administering the affairs of the district, there has been another enactment, *viz:* Chapter 8412, Acts of 1921, where there is levied on all real and personal property in the district an *ad valorem* tax of one mill on each one dollar valuation, to be known as a "maintenance tax" and used for maintenance, repairs, up- · keep and *any other general and necessary purpose of the district.*

The answer and return of the respondents allege that the board of commissioners have "no funds *available*" with which to meet and pay the expense of listing the property for drainage taxes, and that the board is therefore unable to prepare tax lists or to have them published as required by Section 1167, or any other Act, etc. This is, in our opinion, a conclusion of fact. There is no allegation that the board of commissioners, or the Everglades Drainage District, has no credit, or that the respondents have made any effort to execute their authority to borrow on temporary loans, funds alleged to be necessary for the performance of the commands of the alternative writ. There is no allegation that the board has been refused a temporary loan for such purpose. There is no allegation that the proceeds of the one-mill *ad valorem* tax for the year 1932, which it appears was assessed and presumably is being collected, are not available to pay the alleged necessary items of expense. There is no allegation in the answer and return that any effort has been made or is being made by the board of commissioners to segregate or to have segregated the proceeds of the one-mill *ad valorem* tax alleged to be included in the $68,375.86 alleged to have been ordered paid by the Treasurer on the Rorick judgment. It was practically admitted

at the hearing, on oral argument, that proceeds of the one-mill maintenance tax, provided for in Chapter 8412, Laws of Florida, are included in the amount above mentioned. Funds arising, or that may arise, out of the proceeds of the "maintenance tax" provided for in Chapter 8412, Laws of Florida, 1921, are available for use in paying such items of expense as the respondents claim will be incurred in preparing the tax lists, and that will result from their preparation. In our opinion, the board of commissioners can and should ascertain the amount arising from the one-mill maintenance tax now held by the State Treasurer as custodian of the funds of the Everglades Drainage District. Even if the law contemplates that the expenses and charges set forth by the respondents, as necessary to be paid are in hand before they are required to prepare the tax list, there is no allegation that the board has even drawn a warrant on the Treasurer for any such expense items. Nor is there any allegation that payment of any such warrant for any such expense has been refused. The mere fact that the State Treasurer, as custodian of the funds of the Everglades Drainage District, *declines* generally to honor warrants, and has *declined* to disburse any money for *administration* or *maintenance* of the district, *or for the payment of any obligation* other than bonds or the interest thereon, does not justify the board in simply quitting, as it were. There is no allegation that any effort was made before this mandamus proceeding, or since, to have the State Treasurer honor warrants for funds alleged by respondents to be necessary to enable them to function as required in Section 1167, Revised General Statutes, *supra*.

There is no allegation that any stationery company, prior to the issuance of the alternative writ of mandamus herein, refused to sell the board sufficient paper, pencils and other

materials necessary for making the tax lists. There is no allegation that any effort was, or has been, made to secure clerical assistance in preparing the lists, and such help refused, because funds to compensate such help were not immediately available. The respondents fail to allege that any newspaper in either Tallahassee or Miami, refused to publish "notices of the completion of the tax lists," because of the lack of funds in hand to pay for the same. There is, in our opinion, no merit in the contention that the respondents had or have no funds to pay the tax assessors of the several counties for extending the drainage taxes on the tax rolls of such counties.

In the first place, the law does not provide that the tax assessors shall be paid in advance. In fact, their compensation cannot be determined until after the tax rolls are completed. In Section 1174, Revised General Statutes, Section 1545, Compiled General Laws, it is provided as follows: "The tax assessor shall receive as compensation for the duties required of him by the provisions of this Article a commission of one per cent upon the amount of drainage taxes *assessed* within the respective county, *except errors.*" (Italics ours.) There is no provision as to exactly when this compensation is to be paid, but it is clearly *after* the tax assessors have completed their work. If Chapter 14717 should be considered, regarding the compensations of the tax assessors, it provides the same as Section 1174, Revised General Statutes, *supra,* with this additional provision: *"Upon the completion* of the tax roll for each year the board shall pay to the tax assessor an amount equal to eighty per centum of the total compensation which shall be on the face of the tax roll, earned by him," etc. We think, however, that Section 1174, Revised General Statutes, must govern in compensating the assessors, for making the extensions under

Section 1167, Revised General Statutes, which we have held must be followed in making the assessments herein sought.

In the second place, regarding the defense set up by the respondents, Board of Commissioners of Everglades Drainage District, that they have no funds to pay the assessors, we say it is without merit for the reason there is no allegation that the tax assessors will not do the work unless the funds are immediately available. In fact, the tax assessors of the respective counties are respondents in this very proceeding, and neither of them has set forth in the answer or return that there are no funds in hand or available to compensate him for his work, and that for such reason he declines to receive any tax list prepared by the board of commissioners and enter the drainage tax therein contained on the tax roll of his county.

Let us again refer to Section 1167, Revised General Statutes, Section 1537, Compiled General Laws, and observe its provisions to see if the answer of the respondents in the instant case, have set out in detail all the facts necessary to sustain the avoidance claimed in such return. This section provides that: "On the second Tuesday in January of each year, the said *board shall* prepare for each county in which said district may lie, in whole or in part, a list of the lands lying in such county and embraced in said drainage district * * * and upon such list or lists shall be designated the amount assessed by this Article upon each section of land or part thereof, for the year in which such list or lists are made. Immediately upon the preparation of such lists the board shall cause to be published in a newspaper published in Tallahassee and in a newspaper published in Miami, once each week for two weeks, a *notice of the completion of such lists,* and that the same can be examined at the office of the said board, and that on a day to be specified

in said notice * * * the board shall meet at the office of said board and hear and determine all complaints in relation to the preparation of such lists by the said board," etc.

It will be observed that the *board* has simply to prepare lists of lands embraced in the Everglades Drainage District lying in each county and insert the amount of drainage tax per acre, fixed by the Legislature.

There is nothing said in this statute about publishing the lists in the respective newspaper. They are simply to publish a *notice* in the two papers that the *lists have been completed,* and where they may be examined, and when interested parties may make complaints. There is nothing in this statute providing that notices shall be mailed to the land owners, that the lists have been made and when and where complaints will be heard and determined by the board, as the respondents claim in their answer they will be required to do. While the members of the Board serve without compensation being provided, it would seem that even if unable to secure clerical assistance they are required to prepare these lists under the provisions of the statute.

The preparation of these drainage tax lists by the Board of Commissioners of Everglades Drainage District, is a matter of vital importance to the drainage program. Unless the board functions as provided by the law, the taxes levied and assessed by the provisions of the drainage Acts, cannot be collected. The entire drainage system in the Everglades Drainage District would collapse. Millions of dollars already spent for drainage purposes will have been lost, through the resultant waste and deterioration of the drainage system already finished. The bonded indebtedness of the district would have to be repudiated to the great detriment of the credit and good name not only of the district but of the State of Florida. We find nothing in the law that

shows any intent on the part of the lawmakers that, unless funds are in hand to pay for the materials, clerical work and publishing of notices, expense of meeting of the board, and the compensation of the tax assessors, the board of commissioners need not perform the duties clearly and explicitly imposed by the provisions of Section 1167, Revised General Statutes of Florida. It is our opinion that such a thing was never contemplated by the legislators.

Let us suppose a situation arising in any one or more of the counties of this State, where the budget for paying the mileage and per diem of the members of the board of county commissioners has been exhausted. There are no funds in the budget to pay for the publication of the necessary notice of the meeting to hear complaints, and to equalize the assessment, or to advise taxpayers whose assessments were raised. And furthermore that there were no funds in the budget or depository of the county to pay the tax assessor for assessing the taxes, and that because of this situation the board of county commissioners of such county or counties determines not to function in meeting to equalize the taxes, or to make any levy of taxes, for county purposes. Would such failure or refusal upon the part of such a board of county commissioners be legal or permissible? We think not. While the funds may not be immediately available to meet and pay these items, funds will be available from the tax required to be levied and assessed.

It is doubtful if many of the counties in the State of Florida have in any year funds in their depositories to pay the necessary expenses, fees and charges for the assessment, levy and equalization of the taxes, and preparation of the tax rolls for the ensuing year. Probably many boards of county commissioners in Florida could file returns to alternative writs of mandamus similar to the return in the

case at bar, setting up inability on account of no available funds, in proceedings brought to require them to function in meeting the requirement for the legal assessment of the county taxes. Then, too, as we have already said, even if it is necessary to have the funds immediately available to meet the items mentioned by the respondents, they fail to allege any effort to have any of the necessary work done. Nor have they alleged any demand for any employee, official or newspaper for compensation in advance or assurance of funds in hand for such compensation, nor any refusal of any one approached to do any work or perform any act or duty unless the funds for paying for such services was in hand.

"In a mandamus proceeding to compel the publication of a proposed constitutional amendment by the Secretary of the Commonwealth as required by the Constitution, it is no defense that no appropriation of moneys to defray the cost of publication has been made, *where it is not shown that any newspaper has refused to make the publication without being paid.*" (Italics supplied.) Commonwealth of Pennsylvania, *ex re.* Elkins, Atty. Gen., v. Griest, 196 Pa. 396, 46 Atl. Rep. 505, 50 L. R. A. 568.

The Pennsylvania Court in the case just quoted from, in 50 L. R. A., page 575, text, says the following:

"Two other questions arose upon the hearing in the court below, and they are brought before us by the appeal. The first of them is that, as no appropriation was made of moneys from the public treasury to defray the cost of publication in the newspapers, the Secretary of the Commonwealth could not lawfully make the publication. We do not consider that this question is of any serious force, because, in the first place, *it does not appear, and is not averred, that any newspapers have refused to make the*

*publication without being paid or secured for the cost, or
even that any of them have been asked to make the publica-
tion.*

"The Secretary is not, therefore, able to say that he
*cannot make the publication for the reason stated, and hence
such inability cannot be set up as a bar to the enforcement
of the Act* proposing the amendments. It was at least his
duty to try to make the publication before he could be heard
to say that it cannot be done. But in the next place the
mandate of the Constitution is upon him and he must obey
it in terms. If it is utterly impossible for him to obey it
literally, he can *make that clear to the Court,* stating the
reasons; and then it would be for the Court to determine
in a proper proceeding, whether the publication can be made
or not." (Italics supplied.)

Another rather pertinent expression of the Supreme Court
of Pennsylvania found on the same page, from which we
have just quoted, is the following:

"In the third place, it is not to be assumed that the State
will not pay, or cannot be caused to pay by judicial decree,
the necessary cost of carrying out a peremptory order which
has been officially promulgated by the State Legislature in
strict conformity with the requirements of the State Con-
stitution."

The respondents in both paragraphs 22 and 23 of their
answer and return, lay much stress upon the injunction
proceedings in the Federal Court, in which the State
Treasurer, W. V. Knott, as custodian of the funds, etc., of
Everglades Drainage District, was restrained from paying
out any moneys save for bonds and the interest thereon.
This injunction proceeding cannot, and does not, bar the
relators in this cause, from securing a writ of mandamus,
which may require the Board of Commissioners of Ever-

glades Drainage District to demand funds in the custody of the Treasurer to be rightfully used under the provisions of law. These relators were not parties to the equity proceedings in the Federal Court. Even if this was a proceeding against W. V. Knott, State Treasurer, to coerce him to pay out funds, contrary to the injunction order, the fact of the injunction would not be a valid defense to the mandamus proceeding. On page 141, 18 R. C. L., the writer, concerning the issuance of a writ of mandamus against an officer who is under injunction, says the following:

"The question has arisen in a number of cases as to the effect of the fact that the officer whose action is sought to be coerced by mandamus is under an injunction restraining him from doing the particular act. In such a case it is self evident that if the applicant for the mandate was a party or privy to the injunction suit his right to have the act performed must necessarily have arisen and been adjudicated in such suit, and his right to have the act performed would therefore be *res adjudicata,* and could not, so long as the decision remains unreversed, be reopened in a mandamus proceeding, and also if he should obtain a mandate against the injunction he would be guilty of contempt and answerable therefor in the court of equity. *Where, however, the applicant for the mandate was not a party or privy to the injunction suit,* the decree of the court cannot conclude him, and according to the better view the fact of the existence of the injunction *will not preclude the issuance of a mandate requiring the officer to perform the act enjoined.* In such a case the officer cannot be embarrassed by this, because the act of the law, as well as the act of of God, can always be pleaded in excuse for non-compliance with the injunction. The mandamus would be an act of

the law, which could thus be pleaded by the officer in excuse of not obeying the injunction, and such an excuse would undoubtedly be accepted by the chancery court. This is so not because the court issuing the mandate has any superiority over that court, but from the nature and circumstances of the case, and particularly from the fact that the applicant for the mandate was not a party to the equity suit." (Italics supplied.)

There is no allegation that the one-mill *ad valorem* tax derived from the annual levy provided for in Chapter 8412, Laws of Florida, Acts of 1921, does not produce revenue sufficient to adequately pay all expenses and other compensations required in the preparation of and resulting from the making and filing of the tax lists.

In the amendment of paragraph 22, quoted above, there was attached a copy of certain resolutions adopted by the Board of Commissioners of Everglades Drainage District, on July 18, 1932. It does not state that the one-mill tax is not sufficient for paying the expenses of the preparation of the lists for drainage taxes, but that it is not adequate to operate and maintain the works of drainage and reclamation.

There are no other or new facts found in this copy of resolutions than already alleged in the body of the answer and return to the writ. These resolutions are in the nature of the "Swan Song" of the board of commissioners, and of the Everglades Drainage District. It provides for the release of all employees by the board. It reaffirms the liability of the board and of the district for the payment of all legal obligations. It "reaffirms" its willingness to co-operate with every bondholder of Everglades Drainage District to the end that the said bonds, principal and interest, may be fully paid. It reaffirms as a fact that the Bondholders' Protective Committee has failed and refused, and persists in

failing and refusing, to co-operate with the board or to pursue a course which will render possible the ultimate payment of the obligations of the district. It states that the "Board believes that a cessation of activities with respect to the keeping of records and the maintenance and operating of reclamation works which has been made necessary by the failure of the said Bondholders' Protective Committee to accept the offer of co-operation repeatedly tendered by this board, is not for the best interest of the creditors of the district and its taxpayers." Another one of the resolutions continues the secretary of the board without compensation, he having expressed, according to the resolution, a willingness to do so. The eighth of these resolutions is as follows: "That this board finds itself unable because of the matter set forth in the preamble of this resolution, to prepare its tax rolls for the year 1932, such inability arising by reason of the fact that the board has no funds to pay the costs of completing such tax rolls or to pay the costs of advertising the notices of hearing required by law, or to pay the tax assessors for extending such taxes upon the tax rolls."

The recitation in the preamble of these resolutions set forth no fact different from those alleged in the return proper, except that the board has undertaken to have negotiations with the Bondholders' Protective Committee, looking toward an adjustment of matters and arranging some plan for ultimate payment of the bonds. As we have already stated, these resolutions do not supply any of the deficiencies in the allegations of fact found in the answer and return. These resolutions were adopted some six months after the tax lists for 1932 should have been prepared under the law. The fact that efforts to adjust the differences between the board and the Bondholders' Protective Committee did not

warrant the Board of Everglades Drainage District in refusing or failing to even make an effort to "carry on" to the extent at least of performing its duty in taking the essential steps to make possible the entry of drainage tax on the tax rolls, and give power to the tax collector to collect same.

It would seem from paragraph XII of the answer and return that the alleged inability of the board of commissioners was not the only reason for the respondents' failure to comply with the commands of the alternative writ. It appears that even if funds were available the respondents would still have declined to obey the mandate of the writ. This is shown quite plainly in the following allegations found in paragraph XII:

"Further answering, respondents say that they have not levied taxes for the year 1932 on account of inability so to do as hereinafter alleged, *but that had they the ability so to do they would not levy taxes under the provisions of Chapter 6456, Acts of 1913, and its amendments for that the same is not now the law of Florida, in that the same was repealed* by Chapter 14717, Acts of 1931, etc."

This Court had, at the time of the filing of this return, decided, and it was the law in this case when the answer was filed, that the provisions for the levy, etc., of the drainage taxes, under the provisions of Chapter 6456 were *not repealed* insofar as the rights of the relators as holders of bonds issued and purchased prior to the alleged repeal, were concerned. It would seem therefore that the alleged *inability* was not in itself that which prevented the board from obeying the writ.

As we have said, the answer and return as a whole is one of confession and avoidance. The failure of the board of commissioners to perform the acts which it is sought to

have them perform is admitted or confessed. From the observations we have made regarding the allegations seeking to establish avoidance, it will be seen that we consider them insufficient to bar the issuance of a peremptory writ. The demurrers, both general and special, to the answer and return of the respondents to the alternative writ of mandamus are sustained.

WHITFIELD, ELLIS, TERRELL and BROWN, J. J., and JOHN U. BIRD, Circuit Judge, concur.

DAVIS, C. J., and BUFORD, J., disqualified.

OPINION FILED FEBRUARY 3, 1934.

CAMPBELL, Circuit Judge.—After the opinion and judgment of this Court filed and entered November 17, 1933, sustaining the general and special demurrers to the answer and return to the alternative writ of mandamus, the respondents, Board of Everglades Drainage Commissioners, and certain of the respondents, tax assessors, filed special returns and answers to the alternative writ of mandamus, as then amended, in which it is alleged that the tax assessment rolls for the years 1932 and 1933 for State and county taxes of the respective counties embraced in the Everglades Drainage District, have already been delivered to the tax collectors of the respective counties, and a great bulk of the State and county taxes for each year already collected, and suggesting that, should a peremptory writ issue, the respondents should not be directed to perform any duties looking to the levy of taxes or assessments for the year 1932 in 1933, and that all such duties as the Court may require to be performed under said writ should be performed in the year 1934, that being the earliest time when an assessment or levy can be made.

Subsequent to the filing of the special answers and returns, the relators have filed their motion to amend the

prayer of the alternative writ of mandamus as amended, so as to require the respondents, Board of Drainage Commissioners of Everglades Drainage District, to prepare a list of the lands subject to the drainage tax in Everglades Drainage District, lying in each of the counties named in said alternative writ as amended, in accordance with the provisions of Section 1167, Revised General Statutes of Florida, and that the several respondent tax assessors be directed to receive such lists for their respective counties, and, forthwith, after receipt thereof, enter upon the tax rolls for the year 1934, and before delivery thereof to the tax collectors, to attach the special warrant required by the provisions of Section 1168, Revised General Statutes.

In the opinion of this Court overruling the demurrer to the alternative writ of mandamus as then amended, we held that the drainage tax for the year 1932 could and should be entered and assessed by the tax assessors of the respective counties involved, on the tax assessments rolls, for the year 1933. This judgment of the Court was modified to the extent of allowing the respondents to file an answer or return to the alternative writ as then amended. By reason of the delay incident to the consideration of the legal questions raised in the answers and returns filed, the drainage tax for the year 1932 cannot be entered on the tax rolls for 1933, as shown by the special answers and returns above referred to.

While this case has been pending and the legal questions raised have been under consideration, this Court has decided certain cases involving the remedy in cases resulting in delays somewhat similar to the situation created by the delay in the instant case. In State, *ex rel.* Klemm v. Baskin, Mayor, 111 Fla. 667, 150 So. 517, we held that:

"Where a legal right has been timely asserted and there-

after judicially upheld on appeal which has interrupted its enforcement in original proceedings, judgment may be subsequently carried into effect on remand of the case, by appropriate modification of judgment in lower court."

In the case of State, *ex rel.* Taliaferro v. Baskin, *et al.*, 113 Fla. 115, 151 So. 421, decided on December 4, 1933, we held:

"Where a municipal budget for current year was adopted without providing for tax levies sufficient to pay principal and interest on municipal bonds, and tax rolls based on such budget was already placed in hands of tax collector, so that withdrawal would cause confusion and disorder in fiscal affairs of city, peremptory writ of mandamus directing that levy will not be ordered, *but relator may amend alternative writ of mandamus so as to provide for inclusion of such items in budget for next ensuing fiscal year."* (Italics supplied.)

In the case from which above is quoted we cited the opinion filed herein on April 7, 1933 (not yet published).

We have already held in the opinion filed herein on April 7, 1933, that the relators timely asserted their legal rights to have the drainage tax for the year 1932, at the rate fixed by Chapter 10026, Laws of Florida, 1925, levied, assessed and entered on the tax rolls of the several counties under the provisions of 1167, Revised General Statutes. The time required in this litigation has been such as to prevent the granting of relief originally prayed for within the time requested in the alternative writ as amended. Now the relators have asked to amend prayer of the alternative writ of mandamus as amended, so that the relief sought, and to which we have decided they are entitled, may be given in this proceeding.

We are of the opinion that the motion to amend the

alternative writ as amended should be granted and the same is therefore hereby granted, and the prayer of the alternative writ of mandamus as amended is considered as amended in the particulars set forth in relators' motion filed on January 25, 1934. In as much as all the questions of law raised in the proceedings by the respective parties have already been determined in favor of the relators, therefore, it is considered and ordered that a peremptory writ of mandamus issue in accordance with the prayer as amended by the alternative writ of mandamus as amended, directed to the respondents, members of the Board of Commissioners of Everglades Drainage District, and to the respondent tax assessors of the several counties named and described in the alternative writ of mandamus as amended, commanding the respondents, Marcus A. Milam, W. H. Lair, Ralph A. Horton, C. E. Simmons and T. W. Weeks, as and constituting the Board of Commissioners of Everglades Drainage District, in compliance with the provisions of Section 1167 of the Revised General Statutes of Florida, forthwith to meet and to make up for each of the said counties named in the alternative writ of mandamus as amended, a list of the lands in Everglades Drainage District lying in such county, subject to drainage tax, and designating upon such list or lists the amount of taxes assessed against each parcel of land for the year 1932, under the provisions of Chapter 10026, Laws of Florida, 1925, and directing and requiring them, after the publication of notice as required by said Section 1167, Revised General Statutes of Florida, forthwith to cause such lists to be signed by the chairman of the Board of Commissioners of Drainage District, and attested by the secretary thereof, and to forward such lists when completed, in compliance with the provisions of said Section 1167, Revised General Statutes of Florida, to the

tax assessors of the respective counties in which the lands lie; and commanding and directing the tax assessors of the respective counties named in the alternative writ of mandamus as amended, or their successors in office, to receive the said lists for their respective counties, and that each of said tax assessors or his successor in office, enter upon the tax roll for 1934 of the county in which he is assessor, the tax levied and assessed for the year 1932 in the list forwarded him by the Board of Commissioners of Everglades Drainage District under this peremptory writ. And the respective tax assessors, upon completion of the tax assessment rolls for the year 1934, are further commanded and directed, upon the delivery thereof to the tax collectors of their respective counties, to attach to their respective tax rolls the special warrant provided for in Section 1168, Revised General Statutes of Florida for the year 1932 drainage tax in addition to that attached for the drainage tax assessed for the year 1934.

WHITFIELD, ELLIS, TERRELL and BROWN, J. J., and BIRD, Circuit Judge, concur.

DAVIS, C. J., and BUFORD, J., disqualified.